No. 22,266.

THE MCCLEERY-DUDLEY LUMBER COMPANY, *Appellee*, v. MABEL
S. WORKMAN et al., (THE MERRIAM MORTGAGE COMPANY
and THE GRANITE SAVINGS BANK AND TRUST COMPANY, *Appellants*).

SYLLABUS BY THE COURT.

1.  TRIAL—*Findings of Fact—Conclusive on Appeal.* The rule followed
    that the special findings of a jury, when approved or adopted by the
    trial court, and supported by substantial though disputed testimony,
    are conclusive on appeal.

2.  LUMBERMAN'S LIEN—*Partial Payment by Check—Form of Check—No
    Notice of a Trust Fund—Pleadings—Issues.* In an action to enforce
    a materialman's lien on a certain property, in precedence of mortgage
    liens, the fact that the creditor accepted a check which was signed by
    the contractor, "F. C. Workman, Trust.—" in payment upon items of
    an account for materials furnished on another property, does not charge
    the materialman with notice that a trust fund is being wrongfully ap-
    propriated by his debtor, when both the trustee and his beneficiary
    were parties to the action and neither of them raised any issue con-
    cerning the existence of such a trust fund, and filed no pleadings and
    submitted to a judgment by default.

3.  SAME—*Partial Payment—No Application of Payment Directed by
    Debtor—Creditor May Make Application.* A bookkeeper who receives
    money for his employer from a debtor "on account" and makes an
    appropriate bookkeeping entry to record the fact of payment, does not
    thereby, without authority, preclude his employer, the materialman,
    from applying that payment to a particular account against his debtor,
    if such application is made within a reasonable time, where the evi-
    dence shows that the materialman's system of bookkeeping was ar-
    ranged so as to keep a record of separate accounts against the debtor
    to preserve the materialman's right to liens on separate properties for
    each of the debtor's accounts.

4.  SAME—*When Materialman's Lien Has Precedence Over Mortgage
    Lien on Same Property.* A contractor was furnished with materials
    for repairing two properties, one owned by his wife, the other by a
    stranger. The materialman kept a book showing the aggregate indebt-
    edness of the contractor, and also kept a record showing what materials
    were furnished for use on each property. The purpose of the latter rec-
    ord was to preserve the materialman's right to a lien on each property.
    On February 10, 1917, the contractor paid $400 on account, without
    specifying more particularly how the money should be applied. On
    or before February 16, 1917, a Sunday and holiday having inter-
    vened, the materialman applied the $400 on the account due for ma-
    terials on the stranger's property, and filed a lien on the property of

the contractor's wife for the materials used in repairing her property. *Held*, that the materialman's lien was properly given precedence over mortgage liens on that property.

Appeal from Shawnee district court, division No. 1; ROBERT D. GARVER, judge.   Opinion filed November 8, 1919.   Affirmed.

*Bennett R. Wheeler*, *S. M. Brewster*, and *John L. Hunt*, all of Topeka, for the appellants.

*Tinkham Veale*, of Topeka, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: In this appeal mortgagees complain of the precedence given to the foreclosure of a mechanic's lien on property covered by their mortgages.

The. plaintiff lumber company supplied certain materials for the improvement of two properties in Topeka—one on Lake street and the other on Lafayette street.   The contractor who purchased these materials was one F. C. Workman, whose wife held the title to the Lake street property.   The Lafayette street property was owned by a stranger to this controversy. The improvements on both properties were made about the same time, covering the period from October 6, 1916, to January 20, 1917, and were supplied by the plaintiff from time to time as needed.   The first delivery of materials was for the Lake street property; the last was for the Lafayette street property.   The plaintiff kept one general account with Workman, but the duplicates of its original delivery sheets were preserved, so that the quantity and value of the materials delivered and used on each property could be ascertained if mechanic's liens should become necessary to secure payment. Shortly before the time limit for filing liens expired, the Merriam Mortgage Company loaned to Workman and wife the sum of $1,500 on the Lake street property, and took two mortgages thereon for security, assigning one mortgage to the Granite Savings Bank and Trust Company and retaining the other. Of the money thus procured, Workman deposited $1,000 in a bank to his credit as F. C. Workman, Trustee; and as plaintiff was pressing him for payment, he delivered to it a check drawn on that bank account, signed "F. C. Workman, Trust.—" A memorandum on the check contained the words "on account."

This payment was made on February 10, 1917. The check was delivered to plaintiff's bookkeeper by Workman's son, who said, "Here is a check on account"; and the bookkeeper gave the young man a receipt, "By check on ac." A few days later, the bookkeeper, pursuant to directions of his employers, made an entry to show that the $400 payment was applied on the "Lafayette job." At that time the plaintiff had received no instructions from Workman directing that the payment should be applied on either of the particular accounts. On February 16, the plaintiff, by letter, notified Workman that the $400 had been applied on the bill for materials furnished for the job on Lafayette street. On February 21, Workman wrote to plaintiff protesting vigorously against that application of the money. The president of the plaintiff company testified that it was the plaintiff's usual business policy to refrain from filing mechanic's liens on the property of third parties where his debtors had property of their own which would protect the company.

"Q. Why was it applied on the Lafayette street job? Ans. . . . Well, we determined it was going to be a question of a lien and if it was going to be a question of a lien, we wanted it a lien on his property and not a lien on Mrs. Payne's property."

The jury made certain special findings of fact, which the trial court adopted:

"1. When the payment of $400 was made by Roy S. Workman to McCleery-Dudley Lumber Company, was there any direction or request made that the payment should be credited on any particular part of the account? Ans. No.

"3. Did the McCleery-Dudley Lumber Company know of Workman applying for a loan? Ans. Yes.

"4. If so, did the McCleery-Dudley Lumber Company know on what property the loan was to be made? Ans. No.

"5. Was there an agreement between the Merriam Mortgage Company and Workman to the effect that the money loaned was to be used to pay the plaintiff's material bill on the Lake street property upon which the loan was made? Ans. No.

"8. Did the McCleery-Dudley Lumber Company know that the $400 payment was the proceeds of a real estate loan made by Workman? Ans. Assumed.

Judgment was given against Workman and wife by default; plaintiff was given a first lien on the Lake street property, and the mortgagees appeal.

The first point urged by appellants is that the $400 payment was made out of a trust fund belonging to Mrs. Workman, of which fact plaintiff was charged with notice, and that the $400 could not be applied on the Lafayette street property. In support of this contention, the appellants' brief says:

"The record shows without dispute that the payment in question is part of the proceeds of the mortgage now held by the Granite Savings Bank & Trust Company. We think that the record shows, as set out in the statement of facts herein, that plaintiff's officers knew these facts, notwithstanding the findings of the jury."

The evidence for plaintiff was positive and unequivocal that the plaintiff's officials had not been informed that the money was the proceeds of a mortgage loan on this particular property on Lake street. They knew that Workman was trying—or said he was trying—to get a loan, but they did not know what particular property was being pledged to procure that loan. It is needless to waste words on the elementary proposition that the findings of fact made by a trial court or jury, when supported by substantial though disputed testimony, are binding on appeal.

In *Underwood v. Fosha*, 96 Kan. 240, 242, 150 Pac. 571, this court said:

"The great difficulty in dealing with the first error assigned is that it asks us to trench upon the recognized province of the jury. . . . Not a month goes by that this court does not have to repeat the elementary rule that the supreme court cannot substitute its judgment for the judgment of the jury on an issue of fact upon which there is conflicting testimony. Counsel cannot seriously expect us to violate the fundamentals of appellate procedure in this respect."

It is said that the fact that the $400 check was signed "F. C. Workman, Trust.—" "carried notice of the trust and of the rights of the beneficiary of the trust." But the pleadings raised no issue concerning a trust fund, and no one but the trustee, Workman, or the *cestui que trust,* Mrs. Workman, has any right to be heard on that subject. They filed no pleadings, they submitted to judgment by default, and their day in court is concluded. The existence of the trust—if there was a trust— the purpose of it, the misappropriation of it—if it was misap-

propriated—are not matters of which the appellants can complain. They have no legal interest therein.

The next contention is that, since the $400 payment was made "on account," and plaintiff receipted for the money "on account," and first applied the payment generally on the aggregate of Workman's accounts for the materials supplied to both the Lake street job and the Lafayette street job, such payment and application discharged the earliest items of the account, most of which were for the Lake street property. It is the law that a debtor who owes two or more accounts to a creditor may direct to which account any money which he voluntarily pays shall be applied. It is also the law that when the debtor pays without directing to which of his accounts his payment shall be applied, the creditor has the privilege of applying the sum paid to either of the accounts. (*King v. Sutton*, 42 Kan. 600, 22 Pac. 695.) And where neither debtor nor creditor exercises this privilege, the court will apply it as justice may suggest (21 R. C. L., 97-100), and this often requires that the payment be applied to the discharge of the earliest items of the account. (*Pond & Hasey Co. v. O'Connor*, 70 Minn. 266, 270; *Chapman & als v. Comm'th*, 25 Grattan, [Va.] 721, 750.) Because the plaintiff's bookkeeper did not credit the payment at once to Workman's account for the materials for the Lafayette street job, but entered it "on account," the appellants invoke the rule that once the creditor has appropriated the payment in a particular way, he is bound by his act, and cannot afterwards change the application without the debtor's consent. (21 R. C. L. 93.) This rule is correct and just, no doubt; but it should be noted that the check was received by plaintiff's bookkeeper, and his entries merely chronicled the fact of payment. The bookkeeper was not shown to have any discretion as to which of Workman's accounts should be credited therewith. That was the concern of his employers; and within a reasonable time, they made the application which they had a right to make—to the Lafayette street account. It was clearly shown by the evidence that, while the plaintiff's bookkeeping system had "an account" with Workman, yet that system also contained the proper data so that if it became necessary to file mechanic's liens the items could be segregated so as to charge each job separately with

the materials used in each job. Certainly no mechanic's lien could attach to the one property for materials used in the repair of the other property. The mechanic's lien law, and any court applying that law, would deal with the business relationships of Workman and the plaintiff as involving two separate accounts. As a business necessity, and as a legal necessity also—if the materialman expected to invoke his right to a lien—the separate identity of the two accounts had to be preserved, and they were so preserved. The evidence shows that the plaintiff company consistently pursued such a course of dealing with Workman as to preserve its right to a lien for the materials furnished on each of these properties. It also shows that as soon as the fact of payment was brought to the attention of a responsible officer of the plaintiff, and that was within a reasonable time, the money was applied to Workman's account for the Lafayette street job. In this the court holds that the plaintiff was within its rights; and that neither the rule forbidding a change of the application of payment once credited to a particular account, nor the rule requiring payment to be applied to the discharge of the earliest items of a general account, is involved in this action.

There is no error in the record, and the judgment is affirmed.