## No. 27,433.

THE AMERICAN NATIONAL BANK OF HUTCHINSON, *Appellant*, v. MARY V. GRAVES LIPE et al., *Appellees.*

### SYLLABUS BY THE COURT.

1. MORTGAGE—*Duress—Successive Coercive Contracts—Evidence.* In an action to recover judgment on a note and to foreclose a mortgage given as security therefor, the evidence to support a defense that the note and mortgage had their inception in a succession of coercive contracts and transactions between the bank and the principal maker, in which certain statements and intimations of the bank's agents overcame her free will and put her in fear that unless she made the first of such contracts the bank would prosecute her son for actual or pretended financial irregularities and cause him to be sent to the penitentiary, considered, and held sufficient to support the verdict and judgment for defendants.

2. SAME—*Duress—Continuation or Termination of Coercion—Ratification.* The record does not show as a matter of law that after the execution of the first contract the alleged coercion of the principal defendant by the plaintiff terminated before the execution of the second contract, nor prior to the execution of the note and mortgage, nor can it be declared as a matter of law that the principal defendant voluntarily ratified any of her transactions with the bank.

3. SAME—*Generally.* Other objections to the judgment considered and not sustained.

Appeal from Saline district court; DALLAS GROVER, judge. Opinion filed June 11, 1927. Affirmed.

*A. C. Malloy, R. C. Davis, Warren H. White,* all of Hutchinson, and *Z. C. Millikin,* of Salina, for the appellant.

*C. W. Burch, B. I. Litowich* and *La Rue Royce,* all of Salina, for the appellees.

The opinion of the court was delivered by

DAWSON, J.: This was an action to foreclose a mortgage on a Salina residence property given to secure an alleged loan of $3,000 evidenced by a note for that amount, dated April 1, 1922, due in six months, and executed by defendants in favor of plaintiff.

The defense was that the note and mortgage were procured by duress and fraud practiced on the defendant Mary V. Graves Lipe, the alleged details of which were to this effect:

Contracts, 13 C. J. pp. 404 n. 20, 625 n. 11.   Duress, 20 L. R. A. n. s. 484; 37 L. R. A. n. s. 539; L. R. A. 1915D, 1118; 17 A. L. R. 325; 32 A. L. R. 424; 9 R. C. L. 725, 726.   Mortgages, 27 Cyc. pp. 1551 n. 95, 1619 n. 56.

In 1920 one J. F. Graves, also named "Heinie" or "Herman" Graves, son of the defendant Mary V. Graves Lipe, was engaged in dealing in grain in Hutchinson. Early in December, 1920, he got into financial difficulties, perhaps criminal irregularities, and left town. Within a day or two after his disappearance one Jay Hausam, another Hutchinson grain operator with whom J. F. Graves had been associated in business, and who was himself heavily obligated to the plaintiff bank, called the defendant Mrs. Lipe by long-distance telephone at Enterprise and told her her son had absconded and that the plaintiff bank had detectives on his trail and he would be caught and sent to the penitentiary, and urged her to come to Hutchinson and directly to his office, as her presence might help her son. Accompanied by another of her sons, she hastened to Hutchinson and called at Hausam's office, and he told her the plaintiff's officers and directors were about to hold a meeting concerning her son's affairs. Hausam escorted her to the office of plaintiff's attorney and there, after an inquiry into her financial status, she executed a contract agreeing to turn over to the plaintiff bank ten shares of stock in a building and loan association and gave her note for $4,000 nominally due in one year but actually to be due at her mother's death, as Mrs. Lipe had a remainderman's one-fourth interest in her deceased father's estate which would be worth enough to meet that note at the termination of her mother's life estate therein.

Following her mother's death about a year later, defendant caused the proceeds of her share of her father's estate, about $4,200, to be delivered to the plaintiff bank, and the bank let her purchase a house in Salina with part of this money, taking her note for $3,000 and a mortgage on the house to secure its repayment.

To enforce collection of this note this action was begun.

In her answer to plaintiff's petition defendant alleged that all her dealings with the plaintiff bank were occasioned by the representations of Hausam and the other agents of the bank, which were that unless she turned over her building and loan stock and signed the contract subjecting her expectant interest in her father's estate to the satisfaction of the bank's claims against her son, he would be prosecuted and sent to the penitentiary for supposed financial misdeeds the bank's agents intimated he had committed. She alleged that her dread of such dire consequences likely to befall her son induced the doing of all her acts and agreements with the bank, including the giving of the note and mortgage sued on in this action.

Her answer also contained a cross demand for the recovery of the value of the building and loan stock which she had delivered to the bank under the same duress and intimidation.

The evidence of the parties was heard at length. The jury returned a verdict for defendant in the matter of the $3,000 note and mortgage; also a verdict in her behalf for the value of the building and loan stock; and answered many special questions, some of which read:

### Questions Submitted by Plaintiff.

"Q. State whether or not you find that the plaintiff bank requested Jay Hausam to induce Mary Graves Lipe to go to Hutchinson?   A. Yes.

"Q. Did any of the officers of the bank or its attorney know that T. H. Graves had a mother or brother living prior to their arrival at Hutchinson in 1920?   A. Yes.

"Q. Did the attorney for the bank at their first conference advise Mrs. Lipe that she was under no obligation to pledge her property but must do so voluntarily, if at all, or words to that effect?   A. No.

"Q. Did J. F. Graves and his mother know when they started to go to Hutchinson that criminal charges against Heinie Graves were threatened.   A. Yes. . . .

"Q. Did the officers of the plaintiff bank or its attorney know at that time the original contract was signed that such bank had sufficient legal grounds to the criminal prosecution against Heinie Graves?   . . .

"Q. Were criminal charges made or filed in December, 1920, against Heinie Graves?   A. Yes.

"Q. If you find that there were criminal charges pending against him in December, 1920, state who made the charges?   A. Jay Hausam.

"Q. If you find that such charges were made state whether or not you find that such charges were dismissed at the January, 1921, term of the district court of Reno county, Kansas?   A. Yes.

"Q. State whether or not you find that he was permitted to go free as soon as Jay Hausam had talked with him upon his return?   A. Yes. . . .

"Q. Did Mrs. Lipe obtain legal advice in 1924 to the effect that she had a defense to the note and mortgage sued on herein?   A. Yes.

"Q. Did Mrs. Lipe in the spring of 1924 advise Mr. McLeod, president of the plaintiff bank, that she would sell the property and pay the above-mentioned note?   A. She said she would try.

"Q. Did Mrs. Lipe in the late spring of 1924 discuss with Heinie Graves a proposal to offer the sum of $1,500 in settlement of the note sued on in view of the fact that they could obtain a loan for $1,500 on the property?   A. We don't know.

"Q. Did the plaintiff bank at some time during the year 1922 have in its possession as security for the note of Mrs. Lipe and her son a cashier's check for the full amount of the note?   A. Yes.

"Q. Did they thereafter in compliance with her wishes release $3,000 of the money to purchase the property in suit?   A. Yes.

American Nat'l Bank v. Lipe.

"Q. Did Mrs. Lipe in her letter of Feburary 25, 1922, addressed to Mr. Malloy, request that she be permitted to invest the money in a home 'as agreed on in our contract?' A. Yes. . . .

"Q. Did the defendants or either of them or anyone acting for them ever make any complaint to plaintiff bank or any of its officers about any of the transactions between them, or claim that Mrs. Lipe had been defrauded or placed under duress prior to the demand for payment in the spring of 1925 prior to the filing of this suit? A. Yes.          "E. REIGLE, *Foreman.*"

### QUESTIONS SUBMITTED BY DEFENDANTS.

"Q. Was the defendant, Mrs. Lipe, induced to sign the contract in writing mentioned in her answer and cross petition at Hutchinson, Kan., December 8, 1920, solely by the threats of the plaintiff to find, arrest and imprison her son if she did not sign it? A. Yes.

"Q. When she signed said contract was she in such fear from the threats of the plaintiff to find, arrest and imprison her son if she did not then sign said contract that she was deprived of the free exercise of her will power in signing said contract? A. Yes.

"Q. When Mrs. Lipe delivered her building and loan stock and her share of the estate of her father and mother to the plaintiff was she still in such fear from the threats of the plaintiff that it would arrest and imprison her son if she did not carry out the terms of her written contracts with it, that she was deprived of the free exercise of her will power in so delivering her said property to plaintiff? A. Yes. ,

"Q. When she signed and delivered the note and mortgage in suit was she in such fear from the threats of the plaintiff to arrest and imprison her son if she did not secure his debt to the bank that she was deprived of the free exercise of her will power in signing and delivering said note and mortgage? A. Yes."

Judgment was entered accordingly and the bank appeals assigning two errors—the overruling of its motion for judgment notwithstanding the verdict, and overruling its motion for a new trial.

Under this assignment plaintiff first contends that the jury's findings 1, 2, 3, 19 and 24 were not sustained by evidence. Touching findings 1 and 2 the circumstances tended strongly to support an inference that Hausam was acting for the bank when he induced Mrs. Lipe to come to Hutchinson, and that he had informed the bank of her existence. No other rational inference is readily deducible from the fact that he got the woman to come to Hutchinson, and what he said to her and did with her on her arrival—taking her directly to the office of the bank's attorney and other agents, filling her simple mind with dread of the impending danger to her son and the possibility that she could avert that danger by devoting her small means

towards a settlement of his supposed financial irregularities. So far as concerns finding 3 there was evidence *pro* and *con* on that point, and the jury decided the controverted fact as juries are rather prone to do when a bank is plaintiff and a poor, ignorant woman is defendant. But neither statesmanship nor jurisprudence has devised an infallible remedy for such possible imperfection in the administration of justice. We discern no shortage of evidence to support finding 19, nor can we discover any material inconsistency between that finding and anything testified to in defendant's behalf. So far as concerns finding 24 we think plaintiff's contention that it lacks support in the evidence is correct—at least no evidence is called to our attention in the brief of appellee which would support the finding and our own painstaking perusal of the record reveals none except in so far as the fact might be inferred from the incident referred to in finding 19; for it is difficult to conceive how Mrs. Graves and "Heinie" would have the hardihood to offer to settle an ostensible indebtedness of $3,000 for $1,500 without an intimation that defendants were questioning the validity of the transaction which had led up to the giving of the note and mortgage. Be that as it may, the judgment does not necessarily rest on the answer to this question, nor on the answers to questions 1, 2, 3 and 19. At most these particular questions and answers merely tested the jury's sincerity and their understanding of some of the incidents developed in the course of the trial, and they do not show that the jury dealt uncandidly with the vital matters requiring their determination. (*Doty v. Crystal Ice & Fuel Co.*, 122 Kan. 653, 658, 253 Pac. 611.)

Plaintiff next discusses the evidence to support the defense of duress, and argues how improbable it was that even if duress had been practiced on the woman when she first came to Hutchinson in December, 1920, pursuant to Hausam's telephone call, that such alleged duress could have endured for the long period of time which followed when she was far away from any possibility of personal control or coercion by the dominant minds of the bank's officials. Counsel for the bank submit a synopsis of events and transactions to support their argument that duress could not have continued until the giving of the $3,000 note and mortgage, and that both before that transaction and following it Mrs. Lipe had voluntarily ratified the agreement supposedly made by her under duress. That synopsis or chronicle, in part, reads:

"1. December 6, 1920. Hausam . . . notified Mrs. Lipe by telephone

American Nat'l Bank v. Lipe.

that Heinie had gone, and that the Commercial [?] National Bank . . . was threatening to prosecute him, and requested her to come.

"2. December 8, 1920. The threats are alleged to have been made; and contract executed with plaintiff. . . .

"4. January, 1921. Criminal charges against Heinie Graves (instituted by his partner, Jay Hausam, only for the purpose of getting him to return), are dismissed. .. . .

"6. November, 1921. Mrs. Lipe and Heinie voluntarily came to Hutchinson to inform the bank that her mother had died, and executed new contract. . .

"7. January 20, 1922. Mrs. Lipe executed new note and assignment.

"8. February, 1922. Mrs. Lipe and Heinie informed bank as to name and address of administrator of estate, and suggested that in notifying the administrator no intimation be given of the true situation.

"9. February, 1922. Mrs. Lipe demanded release of money 'as agreed in contract'; that she might invest the funds in a home.

"10. Mrs. Lipe and Heinie voluntarily went to Enterprise and arranged with a bank there to act as plaintiff's agent.

"11. April, 1922. Mrs. Lipe and her husband go to Salina bank . . . and sign note and mortgage on which suit is based, and plaintiff bank thereupon releases funds in its possession.

"12. At the last named date the plaintiff bank had the funds in its possession sufficient to pay note.

"13. April, 1924. Mrs. Lipe informed McLeod, president of plaintiff bank, that she would try to sell the Salina house to pay the note.

"14. Afterward in 1924 Mrs. Lipe was informed by her attorney that she had a legal defense to the note and mortgage.

"15. She failed to pay interest and taxes, and bank had to pay taxes.

"16. No complaint ever made about duress until after the suit was filed." [?].

Undeniably this makes a strong showing that the continued existence of duress for the long period covered by this chronicle of events was highly improbable, but it cannot be denied that there was evidence which did tend to show duress and did show that it continued until sometime after the note and mortgage sued on were executed. That being the situation, of what avail is it to seek to persuade this court that this controverted issue of fact might very well have been decided the other way by the tribunal authorized to determine it? (*Perkins v. Accident Association*, 96 Kan. 553, 555, 152 Pac. 736; *Lumber Co. v. Workman*, 105 Kan. 505, 508, and syl. ¶ 1, 185 Pac. 288.) So far as the pertinent law of duress is concerned it must have been declared with substantial accuracy in the court's instructions to the jury, for no complaint or criticism thereof is urged on our attention. And this court has held that there is a presumption that as long as duress endures conduct in apparent recognition of contracts made under such circumstances does not constitute ratification. (*Smith v. Bank*, 90 Kan. 299, 133 Pac. 428; *Bank v. Bay*,

90 Kan. 506, 135 Pac. 684; *Riney v. Doll*, 116 Kan. 26, 225 Pac. 1059; Anno. Duress, Ratification, 35 A. L. R. 866 *et seq.;* 9 C. J. 1205.)

It is also urged that defendants were estopped to set up the defense of duress because they never did move to set aside the contracts or the note and mortgage procured by the alleged duress, and that it was their duty to assume the initiative to have them set aside. This contention assumes that the duress terminated at some considerable interval of time before this action to foreclose the note and mortgage was begun. Sometime in 1924 (finding 17) Mrs. Lipe learned that she had a defense to the note. This action was begun in May, 1925. The delay was not for an unreasonable time, if the rule contended for was one of absolute and invariable application; and, indeed, it could not be so declared that Mrs. Lipe violated that rule. The woman was in possession of the property. She did not pay interest or taxes after taking advice of counsel. Such an omission was one sort of initiative to bring an end to plaintiff's pretensions to the property and to bring the differences of the parties to an issue if plaintiff should be disposed to put the matter to the hazard of litigation. Moreover the rule itself is not one of general application, as was shown in the interesting and somewhat analogous case of *Bell v. Campbell*, 123 Mo. 1, 45 A. S. R. 505, two paragraphs of the syllabus of which, in part, read:

"1. Where a woman, seventy years of age, inexperienced in business and illiterate, is induced by her son-in-law and the sureties upon his official bond to execute a mortgage on her land to indemnify the sureties in defalcation by the son-in-law by holding out to her the probable punishment of the latter, without affording her a chance to consult any disinterested friend, the mortgage will be set aside.

.    .    .    .    .    .    .    .    .    .    .    .    .    .

"3. The fact that she did not move for relief until after the statute of limitations barred any prosecution of the son-in-law, the mortgage not having matured, will not deprive her of relief, as she will be deemed to have acted under the original constraint."

The other matters argued in the painstaking brief of counsel for the bank have been carefully noted, but this court is bound to hold that no error of such gravity as would permit the judgment of the district court to be disturbed is discoverable; and that judgment is therefore affirmed.

BURCH, J., not sitting.