No. 26,779.

THE BOVAIRD SUPPLY COMPANY, *Appellee*, v. LEE WALLACE,
*Appellant*.

SYLLABUS BY THE COURT.

1. PARTNERSHIP—*Relation—Evidence—Written Agreement—Conduct of Parties*. A written agreement is examined, together with the conduct of the parties thereunder, and held to constitute a partnership.

2. SAME—*Relation—As to Third Persons—Undisclosed Contract of Partnership.* Persons who are associated together in a business under a contract which makes them partners *inter se* are partners as to third persons, even though they have not disclosed to such third persons the existence of the partnership.

Appeal from Montgomery district court; JOSEPH W. HOLDREN, judge. Opinion filed December 11, 1926. Affirmed.

*W. N. Banks, O. L. O'Brien* and *Walter L. McVey,* all of Independence, for the appellant.

*Thomas E. Wagstaff* and *Jay W. Scovel,* both of Independence, for the appellee.

The opinion of the court was delivered by

HARVEY, J.: This is an action on an account for merchandise sold. The defendants are J. D. Roberts, Lee Wallace and Mike Roberts, doing business as the Keystone Supply Company and as individuals. The defendants reside in Oklahoma. Service of process was by attachment. Lee Wallace alone defended, and he has appealed from a judgment for plaintiff and against him.

The facts are not seriously controverted and are substantially as follows: Wallace owned a drilling rig which was in need of some repairs and equipment. On April 15, 1914, he and J. D. Roberts entered into the following written agreement (omitting formal parts):

"That whereas, party of the first part is the owner of an Independent Standard drilling rig now located in Armstrong township in Nowata county, Oklahoma, on the Christy and Greenwood farm. And whereas, party of the second part is the owner of certain acreage in Kansas, more particularly described hereinafter. And whereas, it is the mutual desire of the parties hereto to become associated as partners in the development of certain acreage hereinafter described.

"Now, therefore, it is agreed between the parties that party of the second part shall place on the said drilling machine repairs and equipment to the ex-

Partnership, 30 Cyc. pp. 382 n. 47, 406 n. 76, 411 n. 96; 20 R. C. L. 810.

tent of $1,200, and the parties hereto will then be the owner in equal shares of the said drilling machine. Party of the first part then agrees to move his machine to a location to be chosen by party of the second part on the leasehold estate hereinafter described in the state of Kansas, and commence drilling a well for oil and gas mining purposes immediately.

"Party of the second part agrees to pay all expense in connection with the drilling of said well, including the moving expense, and agrees to furnish all casing and material necessary to complete said well, and, in the event a paying well is found, to pay the expense in connecting the said well to the tank, or in case a gas well is found, to connect the same to the pipe-line, or in the event that said well should be a dry hole, to pay the expense in pulling the casing and plugging the said well.

"Upon the completion of said well, party of the first part will then be entitled to an undivided one-eighth interest in and to said leasehold estate, described as containing eighty acres, more or less, and be the owner of an undivided one-eighth interest in said well, and all equipment therein, and party of the first part agrees that in the drilling of future wells upon said property, or in operating the said lease, party of the first part will stand and bear at his own expense the equal one-eighth portion of all expense in connection with said operation and further development of the same, and in the drilling of all wells under this contract party of the first part shall have the exclusive right to control the operation of said machine, including the hiring of help, and party of the first part shall be entitled to regular wages as a driller in drilling of all wells upon this land.

"It is further agreed between the parties that in the drilling of any other wells on any other acreage other than the eighty acres last above described, that each of the parties hereto will bear the expense half and half, and be entitled to an equal division of all profit.

"Party of the second part is to have the care and custody of all books concerning the operation provided for under this contract, and all settlements under this contract shall be based upon said books.

"The firm name of the partnership shall be known as Roberts & Wallace, and all accounts may be created in the name of Roberts & Wallace, and all deposits in the bank shall be carried in the name of Roberts & Wallace, subject to the check of either of the parties hereto.

"It is further agreed between the parties that if at any time either of the parties desires to terminate this contract, or sell his interest in either the property or the drilling machine that he will offer to the other party the option of taking the same at the price that he would sell the same to any third party.

"The partnership relation provided for under this contract shall continue indefinitely, unless definitely terminated by agreement by each of the parties hereto."

This agreement was not recorded and was unknown to plaintiff at the time the merchandise was sold.

The drilling rig was moved to the lease in Kansas. Roberts went to plaintiff, a dealer in oil-well supplies, to purchase a Manila cable, and wished to have further credit extended to him to be charged to

the Keystone Supply Company, which he represented consisted of his father, Mike Roberts; but plaintiff's representative did not know him. Roberts then said he was going to take care of the account anyway, represented that he had a certain acreage east of Coffeyville and a drilling rig thereon, that he was selling a part of the acreage to complete the well, and it would leave him at least the eighty acres on which he was drilling. He represented that there was no indebtedness against the drilling rig except for what he was then buying. Upon this representation he was given short-time credit, with the understanding that plaintiff would look to the rig and its owner, or owners, for payment. Material to the amount of $1,793.14 was so purchased, and Roberts and Wallace used this material in drilling with the rig upon the acreage. The account was not paid, and plaintiff pressed Roberts for payment. On July 16 Roberts wrote plaintiff to be patient for a week or so; "we will be in a position to make things satisfactory to you;" and on July 28 wired plaintiff from Coffeyville that he found it necessary to leave on business. "Will be back Saturday and see you then." A few days later plaintiff's representative went to see Roberts and urged payment, or that a mortgage be given upon the rig and equipment. Roberts then said that he would have to see his partner about that. He was asked who his partner was, and he said it was Wallace. Plaintiff's representative then went to the rig and talked to Wallace, who was drilling. The tools and equipment sold were being used in the work. Wallace declined to give a mortgage on the rig, or join in giving one. Afterwards and on August 8, Roberts executed to Wallace a bill of sale, reciting a consideration of $500, of "all my right, title and interest in and to a certain Independent Standard drilling machine, together with all the tools, cables and equipment therewith," being the drilling rig in question. This bill of sale was received by Wallace and by him recorded in the office of the register of deeds. Soon thereafter this action was brought. There was further evidence tending to show that Wallace knew when he commenced drilling, or. soon thereafter, that the supplies and materials bought by Roberts had come from plaintiff, and that they were not paid for.

Appellant's principal contention is that no completed partnership was ever formed, or consummated, between him and J. D. Roberts; that under the written agreement between them Roberts was to furnish $1,200 worth of repairs and equipment for the drilling rig as a

condition precedent to his having a half interest therein; that Roberts failed to perform his part of the contract, and therefore did not become a part owner with Wallace in the drilling rig. This contention cannot be sustained. The written agreement recites the formation of a partnership *in præsenti* "in the development of certain acreage" described by the leases in Kansas. The $1,200 worth of material and supplies were to be furnished by Roberts before Wallace was to move the drilling machine to the Kansas leases. It was moved to the Kansas leases and was there used, together with material purchased from plaintiff, in the work for which the partnership was created. Appellant was to draw wages for his time as a driller, but nothing for the use of the drilling rig. That was used by the parties for their joint benefit and in prosecuting the business for which the partnership was formed. And it seems clear that when the bill of sale was executed, August 8, both of the parties recognized that Roberts had an interest in the drilling rig, tools and equipment. This, of course, included the merchandise bought from plaintiff. So, from the contract itself and from the interpretation the parties themselves placed upon it, there was a partnership for the purpose of developing the acreage in Kansas between Roberts and Wallace.

Appellant says that Roberts never furnished the $1,200 worth of repairs and equipment mentioned in their agreement. The argument on that point is a little hard to understand. There was about $1,800 worth of equipment purchased from plaintiff. Though perhaps that is not what appellant refers to, he could hardly expect all of this to be furnished under that provision. The record does not disclose whether Roberts furnished the $1,200 worth of repairs and equipment before appellant moved the drilling machine to the lease in Kansas. Of course, he either did do so, or he didn't. If he did do so, he became the owner of an undivided one-half interest therein before these supplies were purchased. If he did not do so, Wallace waived that requirement of their agreement, or at least waived the time of its performance, when he brought the drilling machine to the Kansas leases, and thereby made the question of whether they should be furnished a matter of adjustment between them, upon considerations other than the specific provisions of the written agreement.

When the bill of sale of August 8 was offered in evidence appellant disclaimed any interest in merchandise referred to therein purchased from plaintiff, and contends that Roberts never had any interest in

the remainder of the drilling machinery. If that were true there was nothing transferred by the bill of sale. This position is inconsistent with the bill of sale, as well as with the written agreement between the parties and their joint development of the lease in accordance with their written agreement.

But appellant contends that plaintiff knew nothing about any partnership between him and Roberts until some time after the goods were sold, and that the sale was to Roberts on his credit. Persons who are partners in business between themselves are partners as to third persons, even though they have not disclosed the existence of the partnership (30 Cyc. 382, and cases there cited). The merchandise was sold to Roberts on his representation that he had leases, and a drilling rig thereon which was clear of incumbrances, and the goods purchased were used on the drilling machine on the leases and in the conduct and prosecution of the business of the partnership between appellant and Roberts. The merchandise sold by plaintiff, and used as above stated, was of the kind necessary or useful in the prosecution of the partnership business. There seems to be no valid reason why the partnership, and hence the appellant as one of the partners, should not be liable for it.

Complaint is made of evidence received and of instructions given. We have examined these questions and find no error therein prejudicial to appellant.

The judgment of the court below is affirmed.