No. 27,362.

J. H. MARKHAM et al., *Appellants,* v. S. A. HUNTER et al., *Appellees.*

(260 Pac. 612.)

SYLLABUS BY THE COURT.

1. PARTNERSHIP—*Creation of Relation—Community of Interest.* In this case the three parties to the agreement in question expressed therein a desire of associating themselves together for a specific purpose, designated the particular thing each one was to do or furnish in the future, provided a forfeiture for failure, stated therein it was not a partnership and no one would be authorized to obligate the others, and thereafter all three parties failed in performance. It is *held,* even as to third parties not otherwise misled by the resisting defendants, that such agreement is neither a commercial or trading partnership, nor a mining partnership, in the sense that one could obligate another by a contract made in his own name for himself and the others.

2. SAME—*Generally.* The several assignments of error considered and held not to constitute reversible error.

Appeal from Harvey district court; WILLIAM G. FAIRCHILD, judge. Opinion filed November 5, 1927. Affirmed.

*W. H. von der Heiden, A. E. Morgan, Ezra Branine, Alden E. Branine,* all of Newton, and *J. P. Flinn,* of Wichita, for the appellants.

*A. C. Malloy, Roy C. Davis, Warren H. White, J. R. Beeching* and *W. H. Burnett,* all of Hutchinson, for the appellees.

The opinion of the court was delivered by

HUTCHISON, J.: J. H. Markham and G. A. McMullen, in separate actions in the district court of Harvey county, Kansas, sought to obtain personal judgment against S. A. Hunter, W. F. Hopper and A. D. Stewart and enforce mechanic's liens upon a mining leasehold. The cases were consolidated and tried to the court without a jury. The court made findings of fact which were incorporated in the journal entry, allowed the mechanic's liens, and rendered personal judgment against Hunter and a judgment for costs in favor of Hopper and Stewart. From this latter part of the judgment Markham and McMullen appeal.

The claim of Markham was for labor performed in drilling a well on the leasehold, and that of McMullen for material furnished and labor performed in the construction of the derrick for that purpose.

Mines, 18 R. C. L. 1200. Mines and Minerals, 40 C. J. pp. 1144 n. 84, 1145 n. 95, 1147 n. 24, 28. Partnership, 30 Cyc. pp. 352 n. 10, 353 n. 13, 358 n. 56, 359 n. 57, 415 n. 28, 477 n. 47.

Markham v. Hunter.

Each of these claims was based upon a separate contract made with and by Hunter, but it is claimed in each case to have been made for a partnership consisting of Hunter, Hopper and Stewart.

The sole and only question to be determined upon this appeal is whether or not the written agreement of Hunter, Hopper and Stewart, dated August 11, 1924, created a partnership relation between them and made them copartners in the management, control and operation of the leasehold estate. Hunter joins the appellants in maintaining it was a partnership. Hopper and Stewart, appellees, contend the agreement between them did not create a partnership of any kind nor in any way authorize or empower Hunter to obligate them.

The contract recited in substance that Hunter held three-year oil leases on 1,400 acres in Harvey county under contract for a well to be spudded in by September 1, 1924, for which leases he was to furnish abstracts of title for the examination of the other two parties and place assignments of the leases in the bank for them; that Hopper was to furnish a complete drilling outfit and casing, which was to remain his property unless the well proved a commercial one, and he and Hunter were to superintend the drilling of the well; that Stewart, in coöperation with the other two, was to sell an undivided one-half interest in the leases on 400 acres and the well for $10,000, which sum was estimated to be sufficient to drill the well. No firm name was suggested. Each party was to receive a one-third interest in the entire acreage except the 400 acres, in which they were to receive a one-sixth interest. Any additional acreage acquired by either, or acreage sold, was to be divided equally between them. The following three portions of the agreement are literally quoted, as they are urged as having much to do with the construction of the contract:

"WHEREAS, The parties hereto are desirous of associating themselves together for the purpose of drilling a test well for oil or gas on the S. E. quarter, etc.

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"If either of the parties to this agreement shall fail to perform the obligations enjoined upon them by this agreement, the interest of the defaulting party in said leases shall thereupon terminate and said interest in said leases shall be forfeited to the remaining parties.

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"Neither party shall have the right to bind the other to any obligations or purchases, however, but the other parties or either of them shall have the

right and option to acquire a one-third interest each in said leases or royalties in said block, upon the payment to the purchasing party of one-third of the cost thereof; nor shall any of the parties hereto have the right to bind the other on any obligations—it being understood that this instrument does not constitute a partnership."

Nothing was performed by any of these parties towards complying with his respective part therein. Hunter never furnished or placed in the bank abstracts of title or assignments of leases; Hopper never furnished drilling equipment or casing; and Stewart never sold any interests in the leases, although it is shown he made some effort. Three days after the execution of this agreement, Hunter contracted with McMullen for the construction of the derrick, and twelve days later contracted with Markham for drilling the well. The latter contract was prepared by Hunter to be executed by himself, Hopper, and Stewart, but was never signed by any of them except Hunter. Hopper and Stewart refused to sign or recognize these contracts and disclaimed any interest under the agreement. The following portions of the journal entry give the finding and conclusion of the trial court with reference to these two defendants:

"The court further finds all of the issues herein in favor of said defendants, A. D. Stewart and W. F. Hopper, as against said plaintiff and each of said other-named·defendants and that said plaintiff and said other-named defendants or either of them, are not entitled to any relief herein as against said A. D. Stewart and W. F. Hopper or either of them.

. . . . . . . . . . . . . . .

"It is further considered, ordered, adjudged and decreed by the court herein that said defendants, A. D. Stewart and W. F. Hopper, were not, at any time, copartners or coöwners with said defendant, S. A. Hunter, in the ownership, management, control or operation of said leasehold premises or of any of the personal property locate and situate thereon and that the written agreement existing between said named defendants as introduced in evidence, did not or does not make or constitute said defendants partners or coöwners of said premises or said personal property, and that said defendants, A. D. Stewart and W. F. Hopper, are not jointly or severally liable with said defendant, S. A. Hunter, to said plaintiffs and said defendant·and cross petitioner, G. A. McMullen, for the amounts so adjudged and decreed to be due and owing, as aforesaid."

In the first place, it is quite apparent that this agreement does not create a partnership relation *in præsenti* and at most could only be an executory partnership, because throughout it indicates a future purpose or intention. Nothing was in fact shown to have been done toward its creation at the time the contract was executed.

Each party had something to do before it became effective, and if it is an executory agreement it does not create a partnership until the specified contingencies have happened.

"Persons who have entered into a contract to become partners at some future time, or upon the happening of some future contingency, do not become partners until the agreed time has arrived or the contingency has happened. Whether a partnership exists is determined by ascertaining from the terms of the agreement whether any time has to elapse or any act remains to be done before the right to share profits accrues; for the parties will not be partners until such time has elapsed, or the act has been performed. The mere agreement to form a partnership does not of itself create a partnership; nor does the advancement by one party of his agreed share of the capital." (30 Cyc. 358.)

However strong the language of the agreement may be to the effect that the parties thereto are not creating a partnership or intending to create one, it is not controlling in a case like this where the controversy is between them and third parties instead of among themselves. In other words, it is not what the agreement says it is nor what the parties thereto intended it to be, but what it is in fact. Neither does the fact that the contemplated united effort may be limited in duration or to one project only prevent the arrangement entered into from being a real partnership. We fully concur with appellants that these features alone should not in themselves prevent the relationship created by the agreement being held to be a partnership.

We see no inconsistency between the provision in the agreement for forfeiture and the contingency of performance by the individual signers. Such is decidedly appropriate in the case of these appellees who entirely failed to perform. Again, it is said they should not be relieved from the binding force of a contract by reason of their own failure to perform. This would be the rule if the agreement had not definitely provided for such forfeiture of interest; besides, in this case the evidence shows all parties to the agreement completely failed in substantially every particular. In many cases cited there is evidence of the parties holding themselves out to be partners or permitting it to be done. The evidence in this case is strongly the other way, and consistent effort was made by the appellees to inform third parties that they were not partners. In the case of *Wade v. Hornaday*, 92 Kan. 293, 140 Pac. 870, the court said:

"Partnership is a matter of contract and courts will not create such a con-

tract against the will of a party. A definition of partnership which is at once accurate, comprehensive and exclusive is extremely difficult. . . ." (Syl. ¶ 1.)

"In this case it is held that an arrangement between three persons for a division of the net profits accruing on certain sales of shares of stock in lieu of office rent and services furnished by one, advertising and printing furnished by another, and the services of the other in the sale of the stock and in the advertising and correspondence, did not create a partnership in the sense that one could bind the others by a contract made in the name of all." (Syl. ¶ 2.)

In the case at bar there was to be no sharing of profits, but when the agreement was consummated each was to have a separate and distinct interest in the leasehold. Specific provisions were made to meet expenses, and to avoid incurring any additional ones Hunter's sole duty was to assign the leases and furnish abstracts of title thereto and assist Hopper in superintending the drilling. The authority of a partner is similar to that of an agent, which is not established by his own assertions but by those he represents. There is certainly no authority in the agreement here under consideration for Hunter to bind Hopper or Stewart. We think the trial court construed the agreement correctly as not creating either a commercial or trading partnership or a mining partnership in the sense of enabling Hunter to bind the other parties to the agreement. It completely lacks the elements of coöwners or cotenants to make it a mining partnership. (18 R. C. L. 1200; 40 C. J. 1147-48.)

There is in our judgment very little similarity between the contract and conduct of the parties in this case and the contract and conduct of the parties in the case of *Bovaird Supply Co. v. Wallace,* 122 Kan. 54, 250 Pac. 1073. A careful comparison emphasizes the wide distinction of fact and justifies an entirely different conclusion.

The judgment is affirmed.