Nos. 34,063, 34,064, 34,065
(Consolidated)

Courtney B. Davis, *Appellant,* v. H. J. Sherman, P. J. McIntyre and C. C. Cummings, *Appellees.*

(86 P. 2d 490)

Opinion filed January 28, 1939.

*William Davison*, of St. John, *A. M. Ebright, P. K. Smith, Bernard Peterson* and *Richard A. Hickey*, all of Wichita, for the appellant.

*C. W. Slifer*, of St. John, *Robert C. Foulston, George Siefkin, Sidney L. Foulston, Lester L. Morris, George B. Powers, Carl T. Smith, C. H. Morris* and *John F. Eberhardt*, all of Wichita, for the appellees.

The opinion of the court was delivered by

WEDELL, J.: The action of Courtney B. Davis against H. J. Sherman was one to recover a money judgment from the defendant, a cotenant, in an oil-and-gas lease, and to obtain a lien on the interest of his cotenant. The amount sought constituted a proportionate share for the drilling of an oil well on the lease, which resulted in a dry hole. Plaintiff instituted identical separate actions against the defendants, P. J. McIntyre and C. C. Cummings. The issues in each of the actions are identical and the appeals are consolidated. Judgment went for defendants, and plaintiff appeals.

The trial court made findings of fact and conclusions of law. The essential features of the findings of fact were in substance as follows: Plaintiff was the owner of an equal undivided three-fourths working interest in the lease. The three defendants each owned an equal undivided one-eighth part of the working interest. Other persons owning the remaining fractional interests are not parties to this action. Plaintiff obtained his interest under the terms of a written contract with one G. M. Piggott. Under the terms of that contract plaintiff drilled the first well, which was a commercial producer. The defendants had received their interests before the contract between plaintiff and Piggott was entered into. As to the first well, defendants signed division orders in conformity with which payments were made to plaintiff and to them by the pipe-line company which purchased the oil. Lessor, at different times, requested plaintiff to drill a second well. A second well was commenced by the plaintiff on August 20 or August 30, 1936. That well was completed September 22, 1936, and resulted in a dry hole. The plaintiff, a cotenant, filed lien statements against the interests of the defendant

cotenants on November 3, 1937, or approximately one year and forty days after the completion of the second well. The liens were not filed in time under the provisions of G. S. 1935, 55-209. The liens were claimed by plaintiff for material furnished and labor performed by him in the drilling of the second well. The dry hole was not an offset well. There was no intention of the parties that there should be a mining partnership, and the petitions did not allege a mining partnership. The defendants did not consent to the drilling of the second well. Plaintiff consulted defendants concerning the drilling of a second well and was advised they did not want to drill a second well, and plaintiff took his own chances in obtaining a producing well. Plaintiff did not notify defendants of the commencement of the well. There was no evidence to show they knew plaintiff was drilling the second well. There was no evidence to satisfy the court that defendants were estopped by any act on their part to deny liability for the expense of drilling the second well, and they did not ratify plaintiff's conduct. Plaintiff was not the agent of the defendants in contracting any indebtedness to drill that well. There was no intention between these parties that there should be a mining partnership. There was no intention, express or implied, such as would entitle plaintiff to a lien on the interest of those defendants.

The conclusions of law were in conformity with the special findings.

From the trial court's opinion in overruling plaintiff's motion for a new trial, it expressly appears the trial court further found, from the entire record, there was no evidence of any nature, kind or character, which showed a mining partnership, and the plaintiff did not consider the relationship of the parties to be such as constituted a mining partnership. The trial court was of the opinion the evidence clearly indicated the relationship between the parties was such that plaintiff was of the opinion he must first obtain the consent of the defendants before he could bind them for the costs of drilling the same.

On the argument of the motion for a new trial, the court also considered the motion of defendants for additional findings of fact. No request for any findings had been made by them at the time of trial, and the motion for additional findings appears to have been filed after judgment had been rendered. The trial court was of the opinion its findings covered the issues joined by the pleadings and overruled the motion for additional findings.

Plaintiff was a driller. Such rights as he had in the lease he acquired under the terms of a written contract with G. M. Piggott on March 25, 1933. His interest was acquired in consideration of drilling one test well on the lease at his own expense. He was, however, paid $4,000 on the cost of drilling the well. In the contract it was agreed plaintiff should keep the property free and clear from any and all liens or encumbrances. The contract further provided that in the event the well produced in paying quantities, plaintiff should have the operation, management and control of the leasehold, subject, however, to an operating contract to be thereafter entered into. Such a contract was never executed. In order that, as between plaintiff and Piggott, there might be no future controversy concerning the relationship of the parties in the mining enterprise, the contract specifically provided:

"It is expressly understood and agreed that this contract shall not be construed to constitute a partnership of any kind or character between the parties hereto."

There was evidence on the part of the defendants to the effect that the contract was drawn in Mr. Piggott's name, and was also for the benefit of the defendants. Although one of the defendants was present at the time the contract was executed, there was no direct evidence that plaintiff knew the contract was also made for the benefit of the defendants. On the general question of the intention of the plaintiff and Piggott, as to whether their relationship should be that of partners, and as to whether the relationship of either of them with other parties who might acquire their interest or any part thereof, should constitute a partnership, the following provision in the contract may be noted: "That this contract shall extend to and be binding upon the parties hereto, their heirs, administrators, executors, successors and assigns, . . ."

While the defendants did not acquire their interests by assignments from Piggott, we think these provisions in the contract between plaintiff and Piggott were germane to the issue of contention and were properly considered by the trial court, together with all other evidence of intention, in support of the finding that it was not the intention of the plaintiff that a mining partnership should be formed, in any event, until an operating and development contract had been entered into after the completion of the first well. Nor do we find any specification of error touching the improper admission of this contract in evidence.

Plaintiff contends (1) the evidence disclosed a mining partnership; (2) plaintiff is entitled to a money judgment for the proportionate share of the cotenants in the cost of drilling well number two, and to an equitable lien on the interests of the defendant cotenants.

Counsel for the respective parties have presented able briefs dealing with various phases of the general subject of mining partnerships, joint adventures in drilling for oil and gas, and joint adventures in the operation and development of oil-and-gas properties. A careful analysis of the briefs, however, fails to disclose a single case which is determinative of the fundamental issue here involved. Our research has disclosed no such case in this or any other jurisdiction. We are here confronted at the outset with definite findings of fact which go directly to the heart of the question of the intention of the parties. The trial court tried that issue. It made specific findings upon it and specifically found it was not plaintiff's intention a mining partnership should be formed. While there was a belated request for additional findings of fact, there was no motion to set aside the findings which were made. The only attack made upon them was contained in the motion for a new trial. Assuming, however, such challenge of the special findings was sufficient, they must nevertheless stand. Where special findings are made our only concern is to review the record sufficiently to ascertain whether there is substantial evidence to support them, and not whether there is evidence to overthrow them. (*Gallagher v. Menges & Mange Const. Co.*, 146 Kan. 506, 72 P. 2d 79.) The evidence in the instant case supports the findings of the trial court.

For clarity of thought, it will be well to bear in mind the absence of certain definite facts in the instant case. This case does not present an issue as to the liability of defendants and the plaintiff, as partners, to third parties. That issue would, of course, present an entirely different problem. (*Markham v. Hunter*, 124 Kan. 396, 399, 260 Pac. 612.) The issue here is between cotenants themselves. The case does not involve the question of the liability of one cotenant to another cotenant where the latter drills an offset well which is necessary to prevent drainage. The case does not involve the question of the necessity of drilling a second well, under the terms of a lease contract, in order to keep the lease alive. Nor was any issue raised relative to the necessity of drilling a second well to prevent forfeiture for nondevelopment. True, there was evidence

the lessors desired to have a second well drilled. Such requests are frequent notwithstanding the lack of a legal duty to drill additional wells. They are frequent notwithstanding the present necessity for proration, which prevents marketing of all of the oil from wells already in existence. In any event, the mere request in itself for an additional well does not create the duty to drill the well. Nor can such a request alone saddle upon plaintiff's cotenants the expense of further drilling.

We know of no decision and of no principle upon which a cotenant of an oil-and-gas lease may saddle upon his cotenants his own expense of drilling an oil-and-gas well against their wishes when it is the intention of the parties that a mining partnership shall not exist and that they will not be charged with the expense of drilling unless they consent thereto. That is this case. The fact the cotenants had executed division orders, and had been receiving their share of the proceeds from the oil runs from the first well after deducting the expense of operating that one well, did not create authority in plaintiff as the operator of the lease, under the circumstances in this case, to drill the second well against their wishes. Nor did defendants ratify the drilling of the second well. Obviously under these facts there existed no implied contract to drill the second well or to participate in the expense of drilling it. Plaintiff drilled the well against the wishes of his cotenants and at his own risk. In view of the conclusion we have reached upon the facts it becomes entirely unnecessary to deal with refinements of definitions of mining partnerships or to discuss the various aspects of that subject which are ably treated in the briefs.

What about the lien question? The petition clearly discloses the lien on the interests of plaintiff's cotenants was attempted to be asserted upon statutory and not upon equitable grounds. On that basis the issues were joined. On that theory the liens must fail. Lien statements must be filed within four months from the date material is last furnished or labor performed. (G. S. 1935, 55-209.) They were not so filed. We need, therefore, not consider the question of whether a cotenant may acquire a statutory lien on the leasehold in which he owns an interest, which question defendants contend has been answered in the negative in *Gaudreau v. Smith*, 137 Kan. 644, 21 P. 2d 330. In passing it may be noted the lien there was claimed on the entire lease and not merely on the interest of the cotenant.

During the trial plaintiff abandoned his statutory lien and contended he was entitled to an equitable lien. He asked leave to amend his petition to conform to the proof. The request was denied and, we think, properly. But had the request been granted, we fail to see how plaintiff could have amended his petition to conform to proof which established an equitable lien when such proof did not exist. Under the facts as previously discussed, plaintiff in equity and good conscience was not entitled to a lien, and no case is presented which holds he would be entitled to an equitable lien under the facts in the instant case.

We find no error in the order overruling the motion for a new trial. This was essentially a fact case, and the findings of fact compel an affirmance of the judgment. It is so ordered.