No. 36,555

HARRY W. POTTS (Revived in the name of Ila Belle Potts and John H. Potts, Executors of the Last Will and Testament of Harry W. Potts, deceased), *Appellees, v.* S. E. LUX, JR., RALPH T. McKNAUGHT and GEORGE LISTZ, *Appellants.*

(166 P. 2d 694)

Opinion filed March 9, 1946.

*Tinkham Veale,* of Topeka, argued the cause for the appellants.

*Randal C. Harvey,* of Topeka, argued the cause, and *John S. Dean, Jr.,* of Topeka, was on the briefs for the appellees.

The opinion of the court was delivered by

PARKER, J.: This appeal involves the propriety of orders of the trial court in overruling several demurrers to a petition.

The action was commenced by Harry W. Potts against S. E. Lux, Jr., Ralph T. McKnaught and George Listz, for the purpose of obtaining an accounting and liquidation of the affairs of a business relationship characterized by plaintiff as a partnership. Shortly after its institution Potts died and the cause was revived in the name of Ila Belle Potts and John H. Potts, executors of the last will and testament of such decedent. Hereafter, in the interest of convenience, we shall ignore the persons substituted as plaintiffs and refer to the parties to the action as plaintiff and defendants except when it becomes necessary to refer to them individually in which event we will use the surname of the parties to the business venture involved herein.

When the petition was first filed it was motioned and plaintiff was required to separately state and number his causes of action.

The amended petition contains four causes of action and an addendum in which are general allegations pertaining to all such causes of action. To detail allegations of the present pleadings would take up about six pages of our reports and the result attained would not justify the space required. For that reason we shall summarize them as briefly as the circumstances permit.

The first cause of action alleges: That in 1929 Potts and Lux entered into an oral agreement to engage in the wholesale mercantile business; Potts had experience and Lux had capital, moderate experience and the right to use the name Lux-Witwer Company; Potts learned of an opportunity to rent a well-located building and suggested to Lux that the latter rent it and reëstablish business in the name of such company; Lux agreed to do so on condition Potts engage in the business with him as a partner and assume the major portion of the management of the business; Lux advanced capital in the sum of $100,000 and such parties made arrangements with McKnaught and Listz to engage in the business with them, McKnaught to supervise the operation of the business and bookkeeping and Listz to supervise the warehouse; at the time it was agreed by all parties profits would be divided, as follows: Five percent would first be paid to Lux on his investment before any division of profits and the remainder would be divided, sixty percent to Lux, twenty percent to Potts, five percent to McKnaught and five percent to Listz and ten percent would be put back into the business as a reserve; none of the profits would be divided until one year after they were earned, so that the money could remain in the business; at the end of each year the profits for the preceding year were to be divided only if the business had earned $2,500 over the $5,000 interest charge during the preceding year and any losses would be charged against accumulated profits; in the event·of the liquidation of the business the percentages agreed upon were to prevail and in that event the assets of the business were to be distributed by repayment of original capital advanced by Lux and division of the remainder among the parties in proportion to such percentages.

It then avers: That under the agreement the parties engaged in and, with minor alterations, carried on the business for fifteen years. Potts and Lux exercised managerial authority. All parties drew fixed salaries which were agreed upon and charged as expenses. Business conditions became bad in 1933 and Potts, Mc-

Knaught and Listz agreed to take reductions in salaries, with the understanding that if a profit of $1,000 was earned during the year such reductions would be restored in the form of salary bonuses to be paid at the end of the year; salary bonuses were paid during 1933 and thereafter all parties were paid the regular salaries theretofore agreed upon. In 1933 the parties decided to reduce their original oral agreement to writing, and its general terms were repeated in such written agreement; the business was carried on under such agreement until September 15, 1944, at which time the partnership between Potts and the defendants was dissolved by mutual agreement; since that date Lux has had exclusive control of the business, including assets and the records.

Finally it charges that due to investments made in the business in the form of undistributed profits which were left therein, all of which had been accumulated by the joint efforts of Potts and defendants and were substantially in excess of the original investment of Lux, Potts under the terms of the agreement between the parties had a 20/90 interest in such undistributed profits amounting to $27,777.76.

Made a part of such cause of action and attached to the amended petition is the 1933 written agreement. Its terms disclose a business relationship similar in import to that revealed by the terms of the pleaded oral contract and it would serve no useful purpose to describe them at length.

The second cause of action makes all allegations of the first a part thereof and avers that Lux in the years 1941, 1942 and 1943 had charged to the business as expenses, and taken from such business, his personal income taxes in the amount of $70,000 and that by reason of such improper deductions Potts was entitled to 20/90 of such sum amounting to at least $15,555.54.

The third cause of action by reference includes the allegations of the first and charges that Lux had transferred to S. E. Lux, III, $15,000 of the cash reserve of the business and that the interest of Potts therein amounted to $3,333.32.

The fourth cause of action also includes the allegations of the first and in addition alleges that under the agreement Potts was entitled to 20/90 of the net profits of the business from January 1, 1944, to September 15, 1944, and that his share thereof amounted to at least $8,888.88.

Allegations in the addendum with reference to all causes of action are in substance as follows: None of the amounts alleged by Potts to be due from the business has been paid; defendants have in their possession the books and records showing such amounts; on September 15, 1944, Potts demanded of defendants an accounting and settlement which was refused unless he agreed to accept an amount less than was due him; defendants McKnaught and Listz are necessary parties to the action, including the first, second, third and fourth causes of action set out in the petition, because they are parties to the partnership agreement and claim some interest in the property, assets and profits of the business.

The prayer of the amended petition is for a full and complete accounting on each of the four causes of action, for personal judgment against Lux for the amounts found to be due, for a further judgment declaring the sum total of such amounts to be a lien upon the property and assets of the Lux-Witwer Company, or, in lieu thereof, for liquidation of the business in an equitable manner.

With the amended petition, hereafter referred to as the petition, in form as related Lux filed a general demurrer to the first cause of action on the ground it failed to state a cause of action against him. McKnaught and Listz demurred to each of the four causes of action on similar grounds. All defendants demurred to the pleading as a whole, alleging misjoinder of the several causes of action set forth therein. All three demurrers were overruled and this appeal followed.

At the very beginning of our discussion of the legal points involved time and space will be conserved by stating that all questions presented by the appeal ultimately turn upon the proposition of whether the original agreement between the parties discloses a business undertaking in the nature of a partnership, as contended by appellees or no partnership at all as argued by appellants.

That it is not always easy to determine whether a partnership relationship exists was early recognized by this court in *Wade v. Hornaday,* 92 Kan. 293, 140 Pac. 870, where it was held:

"Partnership is a matter of contract and courts will not create such a contract against the will of a party. *A definition of partnership which is at once accurate, comprehensive and exclusive is extremely difficult.* Participation in the profits is only regarded as a circumstance to be considered in determining whether or not a partnership existed. The mere fact that the parties called

themselves partners and referred to their business relation as a partnership will not necessarily make them partners nor their business a partnership." (Syl. ¶ 1.) (Emphasis supplied.)

Common and well-recognized definitions of a partnership appear in 40 Am. Jur. 126, 127, § 2, where it is stated:

". . . While a partnership has been defined as a combination by two or more persons of capital, or labor, or skill, for the purpose of business for their common benefit, and in similarly brief terms it has been said that a partnership is an association with certain incidents recognized by law for the convenient transaction of legitimate trade and business, yet it has also been said that the most precise and comprehensive definition is that of Chancellor Kent, who defined a partnership as a contract of two or more competent persons to place their money, effects, labor, and skill, or some or all of them, in lawful commerce or business, and to divide the profit and bear the loss in certain proportions. This definition has been many times quoted with approval. In harmony with this definition the Supreme Court of the United States has held that those persons are partners who contribute either property or money to carry on a joint business for their common benefit, and who own and share the profits thereof in certain proportions. . . .

"A definition which avoids these possible criticisms of the language of Chancellor Kent is that found in the provisions of the civil codes of certain states, which provide that a partnership is the association of two or more persons for the purpose of carrying on business together and dividing its profits between them. . . .

"The courts in a number of jurisdictions have approved of definitions containing the added qualification that where there is a partnership there is a communion of the profits, or a community of interest in the profits, and in such cases profits have been defined as the excess of returns over outlays."

See, also, 47 C. J. 640, § 1.

The books are replete with cases on the subject of when and under what circumstances the relationship exists. Counsel for appellants with his customary diligence has cited numerous decisions in support of his position while counsel for appellees with equal aptitude has presented many others tending to uphold his contention. All have been carefully scanned, and have proven helpful in enabling us to reach a decision, but we will not here attempt to refer to them by title or distinguish between them. It will suffice to say that they make one thing crystal clear. It is that the question whether a partnership exists as between particular individuals in a given case is not to be determined by reference to decisions where the factual situation is dissimilar but depends in each instance upon the intention of the parties to the arrangement, the terms of the agreement creating their relationship and the facts

and circumstances evidencing the manner in which their business affairs are carried on once that relationship has been established. Those of our readers interested in pursuing the intricacies of the subject of partnership as distinguished from employment where rights of parties *inter se* or their privies are concerned will find an excellent and extensive discussion on that topic, and many cited cases, in 137 A. L. R. anno, 6 to 174, incl.

.Numerous tests, to be applied in reaching a decision as to whether the things upon which existence of a partnership depend are of such character as to warrant a conclusion the relationship exists, have been recognized by the courts but no one of them can be said to be considered as exclusive or all determinative.

Thus, under conditions here involved, when the sufficiency of a petition is challenged on the ground its allegations fail to disclose the existence of a partnership, and therefore fail to state a cause of action, it becomes necessary to measure all facts related in the pleading by approved tests of partnership. The existence of one factual allegation which meets one criterion amounts to no more than a circumstance to be considered along with all others and is not decisive. The rule, however, is different when allegations of the pleading attacked disclose a series of correlated facts and circumstances most of which, if not all, meet some one of the tests regarded as standard. It is then the question of sufficiency of such pleading becomes less difficult of solution, and indeed, unless it contains admissions which preclude it, the conclusion becomes inescapable that it pleads the existence of an actual partnership under the rule applicable to construction of pleadings on demurrer.

Numbered among the often approved tests to which we have referred are the following: Intention of parties to the contract; sharing in profits and losses; charging of losses against accumulated profits; community of control over management and direction of the business; active participation in management of the affairs of the enterprise; joint control and exercise of ownership over all or part of the business assets; participation in division of the net earnings; sharing in payment of expenses of operation; fixing of salaries by joint agreement; investment in the business of undistributed profits for the purpose of building up a substantial cash reserve; division of undistributed profits in the event of liquidation contingent upon repayment to one of the parties of cash originally invested in capital.

Examination of the petition, so far as intention of the parties is concerned, reveals an express allegation there was a definite understanding that Potts was to engage in the enterprise with Lux as a partner and assume the major portion of the management of the business. Less clear but equally apparent is the fact that McKnaught and Listz were also to participate in the business in that capacity. Further examined, the petition discloses other allegations meeting, either in whole or in part, the tests of a partnership as heretofore outlined. Under such conditions we have little difficulty in concluding the allegations of the first cause of action were sufficient to state a cause of action against Lux and that his demurrer to that portion of the petition was properly overruled.

We do not overlook appellants' argument that the 1933 agreement refers to Lux as sole owner of the Lux-Witwer Company. They contend that fact fixes the agreement between the parties as one of employment rather than of partnership. We do not agree the language used has that effect under our decisions. But conceding it is indicative of such a situation, it is only one circumstance to be considered along with all the other facts and circumstances related in the petition. When so considered it must yield to those to the contrary which we deem much more persuasive.

Although based on factual situations entirely different than those involved in the case at bar we believe our decisions in *Moore v. Thompson,* 105 Kan. 492, 184 Pac. 980; *Apple v. Smith,* 105 Kan. 732, 185 Pac. 903; *Apple v. Smith,* 106 Kan. 717, 190 Pac. 8; *Life Ins. Co. v. Howry,* 108 Kan. 807, 196 Pac. 1103; *Bovaird Supply Co. v. Wallace,* 122 Kan. 54, 250 Pac. 1073; and *Oldsburg State Bank v. Anderson,* 154 Kan. 511, 119 P. 2d 515; and *Davidson v. Shafer,* 153 Kan. 661, 113 P. 2d 90, as well as many others which, because referred to therein, need not be cited, fortify and uphold the conclusion just announced.

Nor do we ignore appellants' contention the business has not been liquidated and hence under the agreement plaintiff is not entitled to undistributed profits or his proportionate interest in the assets of the business as provided for in event of liquidation. Without laboring what is meant by the term liquidation, as used in the contract, we hold that there has been a dissolution of the partnership so far as Potts is concerned and that under allegations of the petition he is now entitled to have an accounting and settlement of its affairs.

In passing we are constrained to add that even in the event the allegations of the petition had failed to reveal a true partnership the ruling of the trial court on the demurrer would still be correct. Beyond doubt, under our decisions, the parties were engaged in a joint adventure or enterprise and its status at the time of the filing of the petition was such as to permit the filing of an action for an accounting and settlement (*Stettauer v. Carney & Stevens*, 20 Kan. 474; *Crawford v. Forrester*, 108 Kan. 222, 194 Pac. 635; *Livingston v. Lewis*, 109 Kan. 298, 198 Pac. 952; and *Shoemake v. Davis*, 146 Kan. 909, 73 P. 2d 1043).

Our conclusion with respect to the demurrer on the first cause of action makes our decision on the rulings on the other demurrers almost apparent. Listz and McKnaught were parties to the original agreement and partners in the business. They have an interest in the controversy and are necessary parties to a complete determination or settlement of the questions involved. The petition so alleges. Under such circumstances they were proper parties to the action (G. S. 1935, 60-411) and their demurrer to all four causes of action on the ground of insufficient facts was properly overruled.

Likewise properly overruled was the demurrer of all defendants to the petition on the ground of misjoinder of causes of action. Our statute, G. S. 1935, 60-601, expressly provides the plaintiff may unite several causes of action in the same petition so long as the causes of action so united affect all the parties to the action. The fact the extent of the relief sought against one defendant is greater than that claimed against the others is immaterial. The test on alleged misjoinder is whether all defendants are to be affected in some manner by the result.

The judgment is affirmed.

HARVEY, C. J., not participating.