No. 24,232.

J. E. McKee, as Administrator of the Estate of Charles H. McKee, Deceased, *Appellee*, v. J. O. McClain and James H. Elliott, *Appellants*.

SYLLABUS BY THE COURT.

1. Sale of Land—*Statute of Frauds—Written Receipt for Part Purchase Price—Signed by Vendor Only—Purchaser Not Bound.* A written instrument acknowledging receipt of a payment upon the purchase price of a farm, specifying the balance due, with other details to be performed by the vendor, and which is signed by the vendor only, while binding on him, does not bind the purchaser, following *Guthrie v. Anderson,* 47 Kan. 383, 28 Pac. 164; *id.,* 49 Kan. 416, 419, 30 Pac. 459.

2. Statute of Frauds—*Receipt and Certain Bonds—Bank Stock Placed in Escrow—Defective Title in Vendor—Vendee Entitled to Stock in Escrow.* Assuming that a valid contract for the sale and purchase of a farm was established by the written receipt of part payment and acknowledgment of the vendor and by a separate assignment of certain bank stock by the vendee, which instruments were placed in the hands of a third party as escrow holder to await full performance by vendor and vendee, it is held that the evidence adduced in plaintiff's behalf was sufficient, as against a demurrer, to show that the contract failed through want of title in the vendor and not through the fault of the vendee, and that the vendee's administrator was entitled to recover the bank stock from the escrow holder.

McKee v. McClain.

3. SAME—*Evidence—Communication With Deceased Person.* A contracting vendor's testimony touching the oral features of an agreement between him and the deceased contracting vendee, relating to the sale and purchase of land, was incompetent under section 320 of the civil code, which disqualifies a witness to testify in his own behalf concerning any transaction or communication had personally by such witness with a deceased person, in an action where the adverse party is the administrator of the deceased contracting vendee.

4. SAME—*Trial Without a Jury—Effect of Incompetent Evidence.* Rule followed, that where a cause is tried without a jury the presumption is that the trial court disregarded all incompetent testimony and that its judgment was not based thereon.

5. PRACTICE—*Opening Case for Further Evidence.* No prejudicial error is necessarily committed by a trial court in permitting a cause submittted to it to be reopened for the purpose of introducing further testimony on either side.

Appeal from Cherokee district court; FRANK W. BOSS, judge. Opinion filed February 10, 1923. Affirmed.

*A. H. Skidmore, C. B. Skidmore, A. A. Skidmore, Al F. Williams, J. O. McClain,* and *Don H. Elleman,* all of Columbus, for the appellants.

*Charles Stephens,* and *Frank E. Dresia,* both of Columbus, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: These were two actions, consolidated, to determine the ownership of certain shares of bank stock formerly owned by the late Charles H. McKee and which in his lifetime he placed in escrow with James H. Elliott.

Plaintiff, who is McKee's administrator, alleged that the bank stock was delivered to Elliott for safe-keeping; that defendant J. C. McClain wrongfully claimed that Elliott should hold the stock for him, but that plaintiff was uninformed as to the nature of the claims of McClain and Elliott to the bank stock. Plaintiff claimed the right of possession of the stock, and damages.

The defendant Elliott filed four successive answers, in each of the first three of which he alleged that he merely held the bank stock in escrow pursuant to a real-estate contract between Charles H. McKee and the defendant McClain, and that McClain had not relieved him of responsibility as such escrow holder. In these three answers he also briefly pleaded the nature of the business transaction between McKee and McClain which gave rise to the escrow. In Elliott's fourth answer, he alleged that he was informed and believed that on

November 23, 1917, McKee and McClain had made a contract for the purchase of 80 acres of land belonging to McClain, at an agreed price of $5,200, and that McClain had agreed to accept the bank stock at a valuation of $1,700, and that McKee was to pay the balance in cash or by assumption of a mortgage, and that McClain thereupon gave McKee a written memorandum acknowledging the sale of the land by him and acknowledging receipt of McKee's bank stock at a valuation of $1,700 to be deducted from the price of the land. This paper was signed by McClain, and delivered by McClain to Elliott, to be held in escrow until the $3,500 was paid, and then the bank stock was to be surrendered to McClain. Elliott's answer further alleged that McClain had fully performed, and that on March 27, 1918, McKee voluntarily defaulted in the payment of the $3,500 and attempted to rescind the contract, and notified McClain in writing to that effect. Defendant Elliott further alleged that McKee thereby forfeited the bank stock and that it thereby became the property of McClain, and that he, Elliott, should not be required to surrender it until the equitable rights of McKee and McClain were adjudicated; and, further, that McClain claimed the bank stock and that defendant feared a personal liability to McClain if he should surrender it.

The defendant, J. O. McClain, answered, alleging that on November 23, 1917, he made a contract with McKee to sell to the latter 80 acres of land for $5,200 and that McKee agreed to and did pay and deliver to defendant the bank stock at an agreed price of $1,700, and agreed to pay the balance, $3,500, in cash or by assumption of a mortgage; and that it was verbally agreed between McKee and McClain that if McKee did not perform the bank stock should be forfeited, and that at the time he delivered to McKee a memorandum as follows:

"HALLOWELL, KANSAS, 11/23/1917.

"Received of C. H. McKee One Certificate number 7, for five shares of stock of the Hallowell State Bank. Also one receipt of James H. Elliott for an additional five shares, same to be figured at $1,700.00, and to be deducted from the purchase price of the North Half of North West Quarter, Section three, Township thirty-three, Range Twenty-two, in Cherokee County, Kansas. The balance to be paid or assumed at $3,500.00. I agree to pay all interest to date of the receipt, and to pay the tax for the year 1917. This deal is made subject to the lease for oil now in effect, which I will assign to McKee. Also subject to lease of present tenant. Abstract to be furnished.

"J. O. McCLAIN."

McClain further alleged that he delivered the bank stock to El-liott to be held in escrow until the $3,500 was paid or mortgage as-sumed, "and until the things to be done in said written memorandum had been complied with by defendant"; that Elliott was to sur-render the stock to him when McClain complied therewith, but that notwithstanding performance on his part, McKee, without McClain's consent, on March 27, 1918, defaulted in payment of the balance of the purchase money and attempted to rescind the contract, and wrote to McClain as follows:

St. Joseph, Mo., Mar. 27, 1918.

"*Mr. J. O. McClain, St. Joseph, Mo.*

"Dear Sir: "This is to notify you that I have this day decided not to buy the land known as the Porter Else Farm, the sale and purchase of which was contracted between us some time ago. And I hereby instruct James Elliott to return to you all papers, deeds, etc., in his hands. And also ask you to order him to return same to me. Assuring you that there is no bad feeling in the matter on my part.          Very truly,      C. H. McKee."

McClain further answered that by such rescission and failure and default McKee had forfeited the bank stock, and that full title thereto vested in defendant and that he was its owner.

The plaintiff's reply to Elliott's answer alleged that McClain had forfeited all rights in the contract and that he was not in a position to convey to McKee good title to the land. Plaintiff's reply to Mc-Clain's answer was to the same effect.

The cause was tried without a jury, and judgment was entered for plaintiff.

The defendants appeal, assigning various errors; but in their brief they say:

"There is really only one question for this court to determine, and that is whether Charles H. McKee and J. O. McClain on November 23, 1917, entered into a valid contract for the sale and purchase of the Porter Else farm, and more particularly described in the statement given by McClain to McKee."

If such is the only question it must be answered in the negative so far as McKee was concerned. If it be true that on November 27, 1917, the defendant McClain executed and delivered to McKee, or to Elliott as escrow holder, the written memorandum purporting to have been signed by him, then of course McClain would be bound by its terms. The memorandum bound its maker. (*Guthrie v. An-derson,* 49 Kan. 416, 419, 30 Pac. 459; *Wiley v. Hellen,* 83 Kan. 544, 112 Pac. 158.) But it did not bind McKee. He did not sign it. (*Guthrie v. Anderson,* 47 Kan. 383, 28 Pac. 164.) But even if Mc-

Clain's written receipt and acknowledgment and McKee's written assignment of his bank stock were construed together to constitute a written contract so as to satisfy the statute, McKee's default was not conclusively established. McKee is dead; his mouth is closed; his administrator was at a considerable disadvantage in establishing his cause of action, but he managed to show that defendant Elliott claimed and pleaded time and again to be no more than an escrow holder. He managed to show also that even assuming the authenticity of McClain's memorandum, McClain was not in a position to convey good title, because on August 29, 1917, he had conveyed the land to J. B. Fink. McClain's testimony, which was clearly incompetent under section 320 of the civil code (*Jaquith v. Davidson*, 21 Kan. 341, 347, 348; *Wilson v. Colborn*, 106 Kan. 440, 180 Pac. 430), sought to explain this by showing that there was an oral understanding between himself and McKee that the deed to the land was to be made by J. B. Fink.

. "I told him deed to the land would be made by J. B. Fink and would be placed in the hands of James H. Elliott for delivery when the abstract had been prepared showing a merchantable title. McKee said that we would delegate James H. Elliott to hold all papers in escrow in the bank at Hallowell, pending the preparation of the abstract and delivery of the deed."

But it was also shown by the records of the register of deeds that this man Fink had conveyed the land to one James Zimmerman by warranty deed dated November 22, 1917, which was the day before the McKee-McClain agreement was made. Defendant Elliott's testimony was that the deed to Zimmerman was dated March 9, 1918, and that the land was transferred to Zimmerman on that date; but of course this oral testimony as to the date of the deed was not the best evidence and could hardly be given credence in the face of the record.

Plaintiff also produced testimony tending to show that McKee never did deliver the bank stock to McClain but gave it direct to Elliott, the escrow holder:

"My father handed the stock to Elliott and told him to hold it until he looked into it further. He did not say anything about the forfeiture of the stock when he gave it to Elliott."

Another witness for plaintiff, Dresia, testified that McClain told him that on November 23, 1917, the day the contract for the land was made, he had sold the bank stock to Elliott.

From the foregoing it is clear that plaintiff's cause of action was

sufficiently established to surmount a demurrer to the evidence, and to reduce the controversy to a question of fact for the trial court's determination. The competent evidence for the defendants did not greatly weaken the plaintiff's case, since the trial court was not bound to believe the testimony adduced in their behalf. Moreover, some features of it tended to discredit the defense.

In Elliott's first, second and third successive answers, filed months apart, he professed to be no more than a mere escrow holder of the bank stock, and his fourth answer was to the same effect. McClain's deposition in part reads:

"I sold to Elliott the ten shares of bank stock referred to for $1,700. Elliott has paid me at various times nearly all of the $1,700, but to my recollection there is yet an unsettled difference between Elliott and me in reference to the balance due and which could not be finally settled pending the court actions in these cases."

Elliott himself testified:

"I paid the $1,700 for this stock at different times. I contracted to purchase it on November 23, 1917. I gave McClain credit."

On rebuttal the plaintiff showed that Elliott told witness McCaskill:

"The bank commissioner told me not to pay anything out on that (dividends on the bank stock) until it was settled up."

A witness for plaintiff had asked Elliott if he would turn over the stock if a bond were given him to protect him against McClain, and Elliott answered: "Yes, that is all I want."

Here then was a fact case, where the plaintiff showed that he, as McKee's administrator, was the owner of the stock; that the escrow purposes had failed for defect of McClain's title; that McKee in his lifetime had asserted his right to the return of the stock; that McClain had no right to it, and moreover that he had sold to Elliott whatever color of right to it he had; and that Elliott had pleaded that he had no concern in it except as escrow holder and yet inconsistently he testified that he had acquired it by purchase from McClain.

The trial court's determination of the disputed facts in issue, being based upon competent and substantial although disputed testimony, is binding on appeal (*Lumber Co. v. Workman*, 105 Kan. 505, 508, 185 Pac. 288), and here, as there was no jury to be misled by incompetent evidence, the admission of any such incompetent testimony, whether for plaintiff or defendants, will be presumed to have

been disregarded. (*Heery v. Reed*, 80 Kan. 380, 102 Pac. 846; *Starbuck v. Kingore*, ante, p. 102, 210 Pac. 930.)

We note the comment of defendants' counsel touching the reopening of the case for the purpose of permitting McKee's son to testify to the conversation between McKee and Elliott at the time the bank stock was placed in Elliott's custody. They say this testimony was an afterthought. Possibly so, but that did not render it incompetent, nor require the trial court to disbelieve it, nor did its belated admission constitute any abuse of the trial court's discretion or create a trial error.

Nothing approaching reversible error is presented, and the judgment is therefore affirmed.