No. 28,176.

J. L. BOYD, *Appellee*, v. WILLIAM COLGAN, *Appellant*.

(268 Pac. 794.)

Opinion filed July 7, 1928.

*R. W. Griggs,* of Meade, and *Randal C. Harvey,* of Topeka, for the appellant.

*C. C. Wilson,* of Meade, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This action arose out of a written contract, by the terms of which defendant granted to plaintiff and another the privilege of hunting and fishing on 120 acres of defendant's land in Meade county. The contract reads:

"MEADE, KANSAS, April 2, 1927.

"This lease made and entered into this second day of April, 1927, by and between Wm. Colgan, of Meade, Kansas, party of the first part, and J. L. Boyd, of Meade, Kansas, and J. A. Campbell, of Topeka, Kansas, parties of the second part.

"Witnesseth: That the said party of the first part agrees to lease unto the said parties of the second part, for the purpose and usage of hunting and fishing, the following-described land, to-wit: The N½ of southwest quarter and the N½ of west half of the southeast quarter of section nineteen (19), township thirty-one (31) south, of range twenty-seven (27) west of the 6th P. M. in Meade county, Kansas.

"For a term of ten years from date hereof, with privilege of renewal at the expiration of that time.

"Said parties of the second part agree to pay to said party of the first part as rental for said premises the sum of fifty ($50) and no/100 dollars per year, payable February 1 of each year, and in case of nonpayment of rental as above mentioned this lease shall become null and void.

"Privilege is given to second parties to put down wells on said land; also to construct a dam on same, said dam not to be constructed so as to cause damage by flood to other land; second parties are not to cause damage by tearing down fences or other improvements on said land, and are to have the privilege of using what is known as the 'hay road' in going to and from said land.

"Witness our hands the day and year above written.

"WM. COLGAN,
"J. L. BOYD."

[Notarial acknowledgment, and indorsement of register of deeds showing recording of the instrument.]

Campbell did not sign or join in this contract. Plaintiff paid $20 of the agreed annual rent at the time the contract was executed by himself and defendant. Plaintiff organized a gun club of 25 members and assigned the contract to the club. Members of this club, and other persons claiming to have oral permission from plaintiff to hunt on the land, began to overrun defendant's premises to his great annoyance and to the detriment of his live stock and to the damage of his fences. Provoked by this state of affairs, defendant put a complete stop to all hunting on his property—taking that position because of Campbell's failure to join in the contract and because the first year's rent of $50 had not been paid in full.

Defendant also took the ground that even if binding between himself and plaintiff the contract did not give plaintiff the right to grant indiscriminate permits to other persons to hunt and fish on the premises.

Hence this lawsuit. Plaintiff invoked injunctive relief to restrain the defendant from interfering with the use of the premises for hunting and fishing by plaintiff and his guests or any persons he might authorize to fish or hunt thereon during the life of the contract.

On issues joined the cause was tried without a jury. Evidence was offered which tended to show that plaintiff had entered into the contract with defendant in contemplation of organizing a gun club and charging the members an annual fee of $5 each; that he had brought Campbell's name into the contract without any authority to do so because Campbell, who resided in Topeka (300 miles away), occasionally came out to hunt in Meade county; and that plaintiff had orally authorized various persons to hunt on the property, and that he and certain of his guests who had gone there to hunt had been ordered off the premises by defendant.

Judgment was entered in plaintiff's behalf in the following terms:

"It is therefore by the court considered, adjudged, ordered and decreed that the plaintiff and his guests and assigns be granted a perpetual injunction against the defendant and all persons acting under him, from molesting or in anywise interfering with the plaintiff, his guests and assigns in their use and possession of N½ of NW¼ and N½ of W½ of SE¼, sec. 19 twp. 31 south, range 27, west 6th P. M. in Meade county, Kansas, as a hunting and fish lease, and that said injunction be and the same is hereby made perpetual during the life of this lease, and that the defendant pay the costs of this action, taxed at $———."

Defendant assigns various errors which he summarizes into three main contentions, viz.:

"First: That the lease was never completely executed or delivered;

"Second: That the consideration for the lease was not paid in accordance with the agreement, and the rights of the plaintiff were forfeited thereby; and

"Third: That even if the lease had lawfully become effective, plaintiff's rights were personal, and he could not transfer them to a gun club or issue permits thereunder."

Touching the first of these, it is quite correct that a binding contract is not effected where a person merely signifies his willingness to contract with two designated persons and that proffered agreement is accepted by only one of them, or by one of them and a third, or by third persons to whom the offer was not made. It is

every man's right to select the persons with whom he will enter into contractual relations. (*Corley v. Ehlers,* 99 Kan. 748, 163 Pac. 140; 1 Page on Contracts, § 193; 13 C. J. 273; 39 Cyc. 1203.) But it is also the privilege of an offerer to waive any terms prescribed by him as a basis for his assent to a proposed agreement; and when defendant signed and acknowledged this contract and permitted it to be recorded, although it only contained plaintiff's signature and his own, and when he received from plaintiff the sum of $20 as part of the first year's rental and retained it, this court is constrained to hold that the want of Campbell's participation in the contract was waived and the agreement became effective between the signatories thereto. (*Edwards v. Gildemeister,* 61 Kan. 141, 59 Pac. 259; 13 C. J. 306.)

The second point raised in defendant's behalf is even more easily disposed of. The contract did not prescribe that the $50 annual rental should be paid in advance. It was to be paid on February 1 of each year. The instrument was executed, delivered, and recorded on April 2, 1927, and consequently no payment was due until February 1, 1928; and long before that date arrived defendant attempted to repudiate the contract and deny to plaintiff the rights which it conferred on him. We note in defendant's answer his offer to return the $20, but that unavailing maneuver was made after the rights of the parties were crystallized for judicial determination.

Coming now to the main question in this lawsuit, was the trial court correct in reading into the contract a grant of the privilege of hunting and fishing on defendant's farm for ten years and for a renewable term of ten years more to "the guests and assigns" of J. L. Boyd—whoever they may be—and to provide for the enforcement of such privilege by the all-powerful injunctive processes of a court of equity? We are familiar with the reluctant attitude of courts of equity to enforce improvident contracts whose strictly legalistic aspects are unassailable. They usually remand all disputants concerning them to their remedies at law. But the cases are rare, indeed, where equity will read into the plain and unambiguous terms of a contract free from fraud or mistake any matter which radically enlarges the obligations of one of the parties thereto, and at the same time lay an interdict against the breach of that contract thus amplified and modified by its decree.

There was testimony that plaintiff contemplated the formation of a gun club to take over the hunting and fishing privileges granted to plaintiff, and that plaintiff was aware of that project before he executed the contract. But the contract is not ambiguous and the preliminary negotiations, whatever they were, were either set down in the written instrument itself or were abandoned by the negotiators. In *Hudson v. Riley*, 104 Kan. 534, 539, 180 Pac. 198, it was said:

"It appears that some evidence was received which varied and contradicted the written contract. Where parties, after negotiations, commit their agreements to an unambiguous written contract, it is to be presumed that they have included in it every material matter, and parol evidence of the preceding negotiations or declarations, in conflict with the written contract, is not admissible. (*Milich v. Armour*, 60 Kan. 229, 56 Pac. 1; *Railway Co. v. Truskett*, 67 Kan. 26, 72 Pac. 562.)"

Again in *Utilities Co. v. Bowersock*, 109 Kan. 718, 727, 202 Pac. 92, it was said:

"It is hardly necessary to refer to authorities that the contract must be construed as a whole, . . . or that where it is not ambiguous the terms of the contract control, and extraneous evidence cannot be resorted to to explain the contract."

The contract between the parties is denominated a "lease," which is perhaps as convenient a designation as any, but the grant contained in it is merely a privilege or license, and is essentially personal in its nature. It is difficult to get more out of this contract than what the statute prescribes as a prerequisite to the creation of a right to hunt or fish on another man's land. (R. S. 32-143.) Certainly the contract does not purport to grant an interest in the land to J. L. Boyd, *his heirs and assigns*. Heirs and assigns are not mentioned; nor is the contract fairly susceptible of an interpretation that defendant made over to plaintiff the right to sublet or grant to other persons the privileges of hunting and fishing on defendant's premises which he himself was to enjoy. Such seems to be the general view of courts which have had occasion to examine such contracts, even where the hunting and fishing rights were conferred not alone upon the grantee but where the heirs and assigns were likewise named therein. The words "heirs and assigns" would not be a designation of grantees in such an instrument but merely words of limitation, under cardinal rules of construction. (*Kirby v. Broadus*, 94 Kan. 48, 145 Pac. 875, and citations.)

In *Bingham v. Salene,* 15 Ore. 208, where the grant was of "the sale and exclusive privilege and easement to shoot, take and kill wild fowl on the lakes, sloughs and waters of the grantor, executed to the grantees [plaintiffs] their heirs and assigns forever," it was held that the grant did not authorize the indiscriminate granting of permits to others to exercise the same privilege. In *Salene v. Isherwood,* 55 Ore. 263, it was held:

"Under a deed granting to persons named, and 'to their heirs and assigns,' the right to hunt and take wild fowl on waters bordering on described lands, the grantees are not entitled to issue permits to hunt on such lands to servants or other persons." (Syl. ¶ 5.)

And in *Isherwood v. Salene,* 61 Ore. 572 (Ann. Cas. 1914B, 542 and note), it was held that the grant of a *profit a prendre* such as a right of hunting over the land of another must be strictly construed and cannot be extended beyond the express terms of the grant.

In *Mallet v. McCord,* 127 Ga. 761, the ancestor of defendant had sold to somebody through whom plaintiff claimed the right in perpetuity to maintain a dam for a mill pond on the grantor's land, reserving to himself the right to fish in the mill pond. It was held that the reserved right to fish in the pond was personal, and was neither assignable nor inheritable, and defendant's claim of right to fish in the pond was denied.

See, also, *Council v. Sanderlin,* 183 N. C. 253; 32 A. L. R. 15, 27 n.; 27 C. J. 943; 12 R. C. L. 689, 690.

It seems clear that the injunction granted to plaintiff was altogether too broad. Plaintiff's "guests and assigns" have no rights in the contract; they are altogether too indefinite to fall within the terms of the contract; and if that injunction were permitted to stand unmodified defendant would never be able to determine who were protected by the injunction and who were mere willful trespassers on his property. The suggestion intrudes that even under the personal grant of hunting and fishing privileges, members of defendant's family might accompany him and participate in his hunting and fishing expeditions. Perhaps so. A court of equity would frown on too narrow a construction of this contract as readily as we are constrained to do against the too broad and indiscriminate construction given it by plaintiff and sanctioned by the trial court. Mayhap, too, the grantee would have the right to be accompanied by his servant to carry his game bag, lunch basket, and the like.

The contract should be fairly interpreted, of course; but by none of the rules of construction nor principles of equity can we assent to plaintiff's contention that the members of a gun club, or plaintiff's "guests or assigns" have or can obtain by assignment or otherwise any rights under the contract set out above. To that end the cause will be remanded for modification of the judgment in accordance herewith.

It is so ordered.

HARVEY, J., not sitting.