No. 36,288

THE DOMAN HUNTING AND FISHING ASSOCIATION, of Kingman, *et al.*, *Appellees*, v. HENRY DOMAN and J. W. BRIGHT, *Appellants*.

(155 P. 2d 438)

Opinion filed January 27, 1945.

*S. S. Alexander*, of Kingman, argued the cause, and *George L. Hay*, of Kingman, was on the briefs for the appellants.

*Paul R. Wunsch*, of Kingman, argued the cause, and *Chas. C. Calkin*, of Kingman, was on the briefs for the appellees.

The opinion of the court was delivered by

PARKER, J.: This was an action instituted under the declaratory judgment statute for the purpose of obtaining judicial construction of a contract and a determination of the rights of parties thereunder. Judgment was rendered in favor of the plaintiffs, and the defendants appeal.

The trial court, at the request of the defendants, made findings of fact and conclusions of law. They fully reveal the contention of the parties as disclosed by the pleadings and the facts as supported by the evidence and for that reason will be quoted by us in lieu of the usual general statement of what gave rise to the controversy.

The findings of fact read:

"1. That just prior to August 30, 1933, the defendant, Henry Doman, had erected a dam on the land of his parents [the word Father was later substituted in place of word Parents], described in the petition, at a cost of about $400.00, and for such construction, by agreement with his parents, was to receive all the rents from the lake formed by said dam.

"2. That on or about August 30, 1933, there were negotiations between the defendant, Doman and Glen Cross, Grover King and others, for the hunting

and fishing privileges upon said lake. Thereupon said Cross went to an attorney who had formerly represented defendant, Doman, in a divorce action and had drafted the contract, a copy of which is attached to plaintiff's petition. This contract was signed by the defendant, Henry Doman, and by his father, Fred Doman, but whether signed in duplicate by any parties of the second part is not clear. That the original copy so signed by the Domans with 20 blank lines for additional signatures was kept by plaintiffs and the defendant, Doman, alleges he did not know it was not signed by any second parties until in 1944. That said contract was treated by all interested parties as a binding obligation for more than 10 years.

"3. That thereafter, organization of the Doman Hunting and Fishing Association proceeded as outlined in said contract, and, on January 18, 1934, a meeting of the Doman Hunting and Fishing Association was held as shown by Plaintiff's Exhibit 10, and a president and secretary and a board of 5 directors were elected. Twelve members, including the defendant, Doman, were present, and motions for incorporation and drafting of bylaws were passed.

"4. On February 20, 1934, another regular meeting of said Association was held as shown by Plaintiff's Exhibit 11, and a draft of bylaws, prepared by a committee, was presented and discussed and adopted article by article and as a whole; that various members signed an application for a state charter and contributed toward expenses. Fourteen members, including defendant, Doman, were present at this meeting. The bylaws so adopted are set forth in Plaintiff's Exhibit 5.

"5. That on April 1, 1940, another regular meeting was held as shown by Plaintiff's Exhibit 12. Twelve members being present, including defendant, Doman, and a special assessment aggregating $6.00 was made to reimburse Doman for certain expenditures; two memberships were offered for sale and there was discussion concerning the sale of the entire club to Doman but no action taken. The following occurred: A call for unfinished business led in a lengthy discussion about leaving the club property gate open, followed by the reading of the original contract on the leased property, and a discussion, and further understanding of various paragraphs, no further action being taken.

"6. On March 18, 1940, a regular meeting was held with 14 members present, not including the defendant, Doman, and certain steps were taken for the policing of the grounds, and to keep outsiders out.

"7. That other meetings of the association were held during the years 1941 to 1944, inclusive, and 18 to 19 members, excluding defendant, Doman, have been paying dues each year. Generally the club secretary collected the dues and paid them over to defendant, Doman, but Doman usually made some collections of dues direct, and as to the number and amount of these dues so collected by Doman there is no record. There is, however, substantial evidence that the secretary collected and paid to defendant, Doman, dues as follows: 1935, $15.00; 1936, $21.00; 1937, $39.00; 1938, $51.00; 1939, $48.00; 1940, $54.00 (Exhibit 19); 1941, $57.00; 1942, $57.00; 1943, $50.00; 1944, $57.00. Defendant, Doman, gave the Association secretary a receipt for the 1943 dues, as follows: 'Bal due on lease contract of the Doman Hunting and Fishing Association for 1943.' The 1944 dues were mailed defendant, Doman, by registered mail June

21, 1944, by First National Bank money order, which remittance was not cashed by Doman but was kept by him until called for at the trial as Exhibit No. 11. The defendant, Doman, has admitted receiving all dues due him from the members of said Association.

"8. Apparently the Association operated over the period of the first 10 years with practical unanimity, and with no complaints from the landowner, except possibly and occasionally, about the gate being left open by someone.

"9. That defendant's father, Fred Doman, died testate in 1936 leaving his widow a life estate in the land with remainder to the defendant, Doman. The widow died in 1942 at which time defendant, Doman, came into full possession and ownership of the land. Neither parent ever objected to said lease or the exercise of plaintiffs' rights thereunder.

"10. That the defendant, Doman, by his acts and conduct is estopped from now claiming that the land involved herein was the homestead of his parents.

"11. On July 26, 1943, the secretary of the Association, by registered mail, sent defendant, Doman, a written notice of election to extend the lease for an additional term of 10 years. Said notice was duly signed by 7 members as officers and directors of the Association, which notice was duly received by defendant, Doman, and more particularly as shown by Plaintiff's exhibit No. 4.

"12. That on January 3, 1944, the defendant, Doman, notified said plaintiffs by registered letter of his refusal to renew the lease and of his reasons therefor, as follows, to wit:

"'Gentlemen: Since the provisions of the lease contract have been so persistently violated, by the officers and members, in leaving the gates open, in tearing down fences, and by killing fish in violation of the Fish and Game laws, I decline to renew the lease.'

"13. There is no evidence of any violation of any of the Fish and Game Laws, and, while the club gate was occasionally found open, and sometimes stock out, there is no satisfactory evidence that any one or more of the club members were directly responsible therefor. There is considerable evidence of liquor bottles being found below the dam and about the gate but there is no evidence of any present members being responsible therefor. The dam and the entrance gate, both being very close to a section line public highway, shaded and generally used by the public.

"14. That the $50.00 received and accepted by the defendant, Doman, on June 22, 1943, as the balance due upon the contract for the year 1943, was for a period beyond the expiration date of the original 10-year term.

"15. That the defendant, Doman, received from the association on June 26, 1944, the annual rental due him under said contract for the calendar year 1944, and kept the same for more than a reasonable time for rejection or disaffirmance.

"16. That the intention of the parties at the time of entering into the contract was that a hunting and fishing club should be formed with the exclusive right of club members to the hunting and fishing privileges on and in said lake, and that as compensation for such privileges, the defendant, Doman, should receive a membership fee of $20.00 each, from not to exceed 20 members, to

cover the cost of constructing the dam, and thereafter, $3.00 per year annual dues from each of approximately 20 members to cover maintenance and rental for a definite period of 10 years, and for an additional 10-year term, if desired by the club members. Since no fishing would be permitted for two years, no dues would be required for the first 3 years, but this provision was later modified to defendant, Doman's, benefit by the bylaws:

"17. That the bylaws were adopted by the club and agreed to by the defendant, Doman, and thereby became a part of the original contract, modifying and clarifying the same, to the extent of making memberships transferable by members, with club consent, and causing yearly dues to become payable January 1, 1935, rather than August 30, 1936, and by making the officers of the club the business agents of the members thereof in club affairs.

"18. That the defendant, Doman, has removed the gate and fenced off the only access to said lake used by the members of said association during the preceeding years.

"19. There is no satisfactory evidence that defendant, Doman, has ever demanded from the association, or from any member thereof, any fees or dues or other amounts for which he has not been paid.

"20. That the defendant, J. W. Bright, has a ten-year agricultural lease, dated February 1, 1943, from the defendant, Doman, upon the 80 acres upon which said lake is located but took said lease with full knowledge of plaintiff's contract and rights, and subject thereto, and does not object to plaintiffs exercising their rights to said lake."

The conclusions of law are:

"1. That since the uncertain provisions of the contract have been construed by the parties themselves by mutual consent and course of dealing over a period of years, such construction should be followed by the court.

"2. That the contract should be construed as a lease granting exclusive hunting and fishing privileges to the members of the Doman Hunting and Fishing Association, an unincorporated club, of not more than 20 members, of which defendant, Doman, is one, for a term of 10 years which expired August 30, 1943, with the privilege of an extension for an additional 10 years, which privilege has been properly exercised and noticed to the defendant, Doman, and which extension will expire not later than August 30, 1953. That memberships are transferable in accordance with the bylaws of the association, and that the defendant, Doman, is entitled to receive as rental under said lease $3.00 per year from each member, January 1, of each year, and payable before July 1, of each year. That said lease covers only the lake and sufficient land surrounding to insure parties free and easy access thereto.

"3. That plaintiffs for themselves, and all other members of said association, are entitled to exercise their rights and privileges of hunting and fishing on and in the Doman lake, located on the East Half of Southwest Quarter of Section 30, Township 27, Range 7 West, in Kingman County, Kansas, under said contract of August 30, 1933, and the bylaws of said association adopted thereunder, and as herewith construed, until August 30, 1953, unless sooner terminated by the acts of the parties or other lawful authority.

"4. That plaintiffs are entitled to have immediately restored the gate or other equally convenient access to said lake, from said nearby road, where previously located.

"5. That defendant, Doman, admitted receipt by him of all dues due him under the contract, and having received all membership fees due, or having accepted dues from unpaid memberships for a long period of years, without objections, and without demand for payment of unpaid memberships fees, if any, is now estopped to demand an accounting therefor from the members, either past or present."

Thereafter the defendants filed a motion to strike out parts and portions of the court's findings of fact and conclusions of law and a motion requesting additional findings and conclusions, each of which was overruled by the trial court. Judgment was then rendered as follows:

"It is therefore by the court considered, ordered, adjudged and decreed that judgment be rendered herein for plaintiffs and against defendants in accordance with the Findings of Fact and Conclusions of Law made herein as above set out, and that said plaintiffs and all other members of said association shall be entitled to exercise their rights and privileges of hunting and fishing upon said premises until the 30th day of August, 1953, under said contract and bylaws of said association, and that said defendants shall forthwith restore said gate and provide said plaintiffs and members of said association with easy ingress to and egress from said grounds and lake, and It Is FURTHER ORDERED, That said defendants and each of them be and they are hereby enjoined from interfering in anywise with said plaintiffs and the members of said Doman Hunting and Fishing Association from exercising all their rights and privileges as provided for by the terms and provisions of said contract and the bylaws of said association."

Several of appellants' numerous assignments of error relate to the findings made by the trial court. As to them, we have carefully. reviewed the evidence, and while it must be conceded there was testimony to support appellants' contention the facts might have been found to be otherwise than as stated therein, we are unable to say there was a lack of substantial evidence on which to base them. Nor do we find testimony which would require other and additional findings. On review this court is concerned only with the evidence which supports the findings, not with evidence which tends to disturb them or is contrary thereto (*Davis v. Sherman*, 149 Kan. 104, 86 P. 2d 490; *Gallagher v. Menges & Mange Const. Co.*, 146 Kan. 506, 72 P. 2d 79; *Holler v. Dickey Clay Mfg. Co.*, 157 Kan. 355, 362, 139 P. 2d 846). When there is ample evidence to support them they are conclusive on appeal even though there is evidence to the contrary (*Farney v. Hauser*, 109 Kan. 75, 198 Pac. 178; *Huston v. Tower*, 126 Kan. 527,

268 Pac. 839; *Isbell v. Payne,* 158 Kan. 298, 147 P. 2d 718). Since there was substantial, competent evidence to support the findings as heretofore quoted we are compelled to adopt them as the ascertained facts of the case and determinative of the rights of the parties. It follows, of course, that there was no error in the court below in overruling motions to strike the findings or to require additional ones to supplement those which had been made.

With facts established we direct our attention to trial rulings complained of by appellants, each of which is assigned as error.

Both before and after answer appellants sought by motion to make individual members and others who at one time had been members of the association parties defendant. No one questions the right of the appellees to bring the action for and on behalf of the association. A declaratory judgment construing the contract would be binding on it as well as its members. The issue sought to be determined was the force and effect of the contract. The trial court was not required to permit the appellants to enlarge the issues so as to involve an accounting and did not abuse its discretion in refusing to do so by overruling the motions. (G. S. 1935, 60-741, 60-416; *Insurance Co. v. Etchen,* 111 Kan. 545, 207 Pac. 782, and *Smith v. Kagey,* 146 Kan. 563, 73 P. 2d 56.)

Appellants complain of the overruling of their motion to make the petition more definite and certain and of like action on a similar motion to the reply. The rule in this state with respect to appellate review on such a question is to be found in *Howell v. Flora,* 155 Kan. 640, 127 P. 2d 721, where it was held:

"Motions to strike and to make definite and certain rest in the sound discretion of the trial court, and from rulings thereon an appeal does not ordinarily lie. Unless it appears the ruling affects a substantial right and in effect determines the action, it is not appealable." (Syl. ¶ 4.)

We have examined these motions. It cannot be successfully contended the ruling on either of them affected the substantial rights of the appellants or resulted in a determination of the action. Therefore, the rulings objected to afford no basis for appeal.

Another complaint is that the demurrer to appellee's petition should have been sustained. This complaint is not well grounded. The petition disclosed an actual controversy existed between the parties with respect to construction of the terms of the contract. Its allegations regarding the interpretation placed upon that instrument by the parties, their conduct with respect thereto, and all other

matters leading up to the institution of the action are so full and complete we experience some difficulty in believing appellants themselves place much reliance on the specification of error which permits them to question this ruling. In any event our conclusion is not without precedent. Shortly after the enactment of the declaratory judgment statute we had occasion to pass upon the force and effect of a demurrer in this type of action. In *School District v. Sheridan Community High School*, 130 Kan. 421, 286 Pac. 230, we held:

"When an action is filed for a declaratory judgment and the petition sets forth facts showing an actual controversy concerning some matter covered by the statute, R. S. 60-3127, it is the duty of the district court to overrule the demurrer to the petition and proceed with the cause in accordance with the provisions of R. S. 60-3217 to 60-3132, inclusive." (Syl. ¶ 1.)

What we have just said disposes of another contention. Since the petition stated a cause of action the appellants' objection to the introduction of evidence at the commencement of the trial was properly overruled.

Specifications of error relating to the admission and rejection of evidence and the force and effect to be given the contract under all the testimony require reference to its terms. It expressly provided for the leasing of the lake on the premises described therein, together with sufficient land to insure free and easy access to and ingress and egress to and from such lake, exclusively to the lessees for a period of ten years with the privilege of extension for another ten-year period. In addition it granted them all rights and privileges of fishing and hunting thereon. It contemplated and authorized the organization of a membership club of which the appellant, Doman, was to be a member. It specifically provided the organization should make rules and regulations governing the use and management of the leased property, which, when agreed to by the parties of the first part should be as binding as though written in full therein and made a part thereof.

It must be remembered we are not here concerned with the right of Henry Doman, Sr., the original owner of the land and one of the lessors, or with those of his wife, who died prior to the institution of the action, but with those of appellant Doman, who now owns the land and was one of the original lessors, who is also a member of the appellee association and who the court found by his acts and conduct recognized the validity of and acquiesced in the terms of the lease after the death of his parents.

With these facts stated we now direct our attention to additional assignments of error.

It is argued the contract is not one of lease but of license. In support of that position appellants direct our attention to *Boyd v. Colgan*, 126 Kan. 497, 268 Pac. 794, where it was held a contract there involved was personal to the lessee and granted him merely the rights of a licensee. An analysis of the decision will reveal the case is not helpful. Facts determinative of that decision were entirely different. The terms and provisions of the instrument in question clearly demonstrated its legal status to be that of a lease and the trial court's conclusion to that effect was proper. Appellants' contention it was not signed by all the parties in no sense defeats the conclusion just announced. The fact that one of the parties to a contract has signed it does not necessarily require that the other should do likewise. When all parties to the agreement recognize its validity and acquiesce in the performance of its terms and conditions, as is the situation here, a contract is valid and binding, notwithstanding some have failed to go through with the formality of affixing their signatures thereto (12 Am. Jur. 551, § 61; *Sentney v. Interurban Railway Co.*, 90 Kan. 610, 135 Pac. 678, and *Hallard v. Kinney*, 135 Kan. 323, 10 P. 2d 836.

It is next argued it was error to refuse to permit Doman to show the leased premises were located on the homestead of the father and mother and that the latter was not a party to the lease. The court refused to permit the introduction of such testimony on the ground the character of the premises as a homestead was not in issue under the pleadings. Without passing on the propriety of the reason for the ruling we note the pleadings and the evidence clearly revealed conduct on the part of Doman which ratified the agreement after the homestead character of the property ceased. Under such circumstances Doman was estopped (*Adams v. Gilbert*, 67 Kan. 273, 72 Pac. 769) from making any such claim. The trial court so found and there was testimony to sustain the finding. The evidence was therefore immaterial so far as it affected the result and no prejudice resulted in its exclusion.

Another argument is that evidence modifying the terms of the contract was erroneously admitted. Of course the court permitted testimony with respect to the enactment of rules and laws by the association and admitted copies of them in evidence. The contract provides that the membership club should make rules and regula-

tions which, when agreed to by the lessors, were to become a part of the agreement as though fully written therein. Doman was a member of the association and there was testimony to the effect he participated in their enactment. The effect of its admission was not to modify but to establish the agreement. Beyond question the evidence was competent and should have been admitted. Being competent it was proper for the trial court to determine from all such evidence whether the bylaws had been passed and adopted and its finding to that effect is determinative of appellant's further contention their motion to strike out the testimony, predicated on the ground they had not been passed and adopted by the association, should have been sustained.

A further and additional claim of error is that appellants' demurrer to appellees' evidence should have been sustained. We do not believe this contention merits much space or attention. This is an action brought under the provisions of the declaratory judgment act. The evidence disclosed the existence of the actual controversy set forth in the petition with certainty. The same reasoning which prompted our decision in *School District v. Sheridan Community High School,* supra—although there we were considering a demurrer to the petition—impels the conclusion that where the evidence adduced by the plaintiff shows an actual controversy exists between the parties it is the duty of the court to overrule a demurrer to the evidence and make final disposition of the cause in the manner contemplated by provisions of the statute which permits the maintenance of such an action.

At the risk of becoming tedious we have carefully considered and disposed of all questions raised by appellants' numerous specifications of error. There is no error in trial or pretrial motions having to do with the parties, the pleadings and the reception or rejection of evidence. The same holds true of rulings on the demurrers to both pleadings and evidence. Under all the ascertained facts and circumstances of the case we have found nothing to convince us that the trial court erred in its conclusions of law or that its judgment included anything other than that contemplated and authorized by law in cases where courts are called upon to determine, under provisions of the declaratory judgment act, the rights and liabilities of parties involved in actual controversies.

The judgment is affirmed.

BURCH, J., not participating.