No. 38,401

James F. Sewell, *Appellant*, v. Theodore R. Dolby and Virginia T. Dolby, *Appellees*.

(237 P. 2d 366)

Opinion filed November 10, 1951.

*Marion C. Miller*, of Kansas City, argued the cause, and *Edward A. Benson, Jr.*, of Kansas City, was with him on the briefs for the appellant.

*Harry Miller, Jr.*, of Kansas City, argued the cause and *Joseph H. McDowell*, of Kansas City, was with him on the briefs for the appellees.

The opinion of the court was delivered by

Thiele, J.: Plaintiff commenced an action to recover a deposit in connection with a purchase of real estate. Defendants filed an answer and counterclaim in which they sought specific performance. The defendants prevailed and plaintiff appeals.

In the petition it was alleged that Zolezzi, a real estate agent, and McDowell, an attorney, were agents of defendants Dolby, and that on March 21, 1950, Zolezzi induced plaintiff to execute a writ-

ing, a copy of which was attached as "Exhibit A," and to pay Mc-Dowell $1,000. "Exhibit A" was as follows:

"Kansas City, Mo., March 21, 1950.

"You are hereby authorized to offer the owner of the property located at West fifty feet, facing on Quindaro Blvd, in K. C. Kan. Between 16th. and 17th. the sum of Three Thousand Five Hundred and no/100 Dollars for said property, on the following terms: Cash $1,000.00 cash, herewith, as earnest money to be returned if offer is not accepted. $_____ additional cash at signing of regular Real Estate Sales Contract, which I agree to sign within three days of acceptance of this offer; balance in the following manner. $2,500.00 Cash on Delivery of Deed. Earnest Money to be Escrowed with Joseph H. McDowell, a Lawyer in the Huron Bldg. Kansas City, Kansas.

"I hereby agree to hold open this offer for acceptance by the owner of said property until _____ P. M. March 24th, 1950.

"/s/ James F. Sewell
"/s/ Theodore R. Dolby"

It was further alleged that plaintiff was induced to sign "Exhibit A" upon representations by Zolezzi that the writing did not contain all of the terms of a real estate contract which would be prepared for execution by the parties, including warranties of title and marketability thereof, fixing a limit of time to perform, and restrictions as to the use of adjoining property owned by defendants, and that unless such a contract was duly executed and delivered within three days, the entire transaction would be of no effect and plaintiff's deposit would be returned to him; that all such representations were false and the defendants and their agents had no intention or expectation of furnishing a real estate contract other than "Exhibit A"; that they were not able to deliver a good title then or to this date, but expected plaintiff to forfeit his deposit or take the property as it was. It was further alleged that the Dolbys have neglected or refused to enter into any such contract; that later plaintiff was furnished an abstract of title; that he obtained an opinion thereon, a copy being attached, and about May 9, 1950, he furnished the opinion to the defendants. Briefly stated the opinion sets forth that the title is in Theodore R. Dolby and Virginia T. Dolby, husband and wife, as joint tenants, subject to a designated mortgage, and certain tax liens, judgment liens, and personal property tax liens, and making some requirements as to other matters not necessary to be here set forth.

The petition then alleges the creation of a judgment lien subsequent to the above, and that by reason of defects in the title the property is worthless, and that although Theodore R. Dolby claims to have accepted the terms of "Exhibit A" he is not the sole owner

of the real estate and in no position to convey the entire fee and plaintiff is without recourse against the other joint tenant; that on account of the delay, on May 19, 1950, he orally notified the defendants that he elected to rescind and demanded return of his $1,000 and the cancellation of "Exhibit A," but that defendants neither cancelled the instrument nor returned the deposit. He prayed judgment for $1,000 and that the "escrow money be paid the Clerk (of the court) forthwith to abide the Court's order."

Defendants Dolby filed an answer and counterclaim in which they admitted the execution of "Exhibit A" and that they accepted the offer and that $1,000 had been deposited with McDowell; that notwithstanding the agreement to execute a "regular Real Estate Sales Contract," defendants did not request plaintiff nor did plaintiff request defendants that such a contract be executed and defendants were induced to and did believe no further agreement was necessary or desirable and that the offer and acceptance constituted an agreement; that in reliance upon the agreement defendants had the abstract of title extended to date and furnished it to plaintiff's attorney for examination, who accepted it and returned it with his written opinion making certain requirements; that by reason thereof they were induced to believe and did believe plaintiff was ready to buy when the requirements were satisfied and immediately upon receipt of the title opinion they proceeded diligently, obtained release of two tax liens and made arrangements to satisfy all the requirements; that on May 19, 1950, plaintiff and his attorney notified McDowell, attorney for Dolbys, they had decided not to complete the purchase and demanded return of the $1,000 deposit and upon McDowell's refusal plaintiff, on June 7, 1950, filed his action; that on June 13, 1950, McDowell paid the $1,000 to the clerk of the court and plaintiff's action was dismissed as to him. Defendants further alleged their willingness to satisfy all of the requirements of the title opinion and had tendered and do tender to the plaintiff a warranty deed to the real estate, but plaintiff refused to accept the deed or carry out his agreement to purchase the property. Defendants' further allegations as to expense incurred and damages they would sustain unless plaintiff be required to purchase the real estate need not be set forth. They prayed for specific performance.

For present purposes it may be said plaintiff's answer to defendants' counterclaim and their reply to his answer are general denials.

Plaintiff filed a motion for judgment on the pleadings.

On October 11, 1950, a trial was had, at which evidence was offered by each party. The trial court took the matter under advisement and on November 27, 1950, it found the allegations of defendants' answer and counterclaim were true and found generally in favor of the defendants and against the plaintiff. The trial court denied plaintiff's motion for judgment on the pleadings, his demurrer to defendants' evidence and rendered judgment in accordance with its findings of fact and conclusions of law, which we abstract and quote as follows:

1. Covers the execution by plaintiff of "Exhibit A."

2. Covers acceptance by Theodore R. Dolby.

3. Covers payment of $1,000 to McDowell.

"4. Immediately thereafter said defendant, Theodore R. Dolby, relieved said J. P. Zolezzi from any further duties and placed the matter of completing the transaction in the hands of his lawyer, Joseph H. McDowell; on or about March 24, 1950, plaintiff requested Zolezzi for a 'Regular real estate sales contract' and the said J. P. Zolezzi then informed the plaintiff that the transaction would thereafter be handled in Kansas, and thereafter all matters relating to the transaction were handled in Kansas by the attorney for defendants and the attorney for plaintiff."

5. Described real estate; that it was owned by Theodore R. Dolby and Virginia T. Dolby as joint tenants and that she did not sign "Exhibit A".

"6. Although the written instrument above described provided for the execution of a 'Regular Real Estate Sales Contract' within three (3) days after acceptance, the plaintiff did not request the defendants to execute any such 'regular Real Estate Sales Contract,' and plaintiff and defendants treated the said written instrument as a final and sufficient agreement between the parties.

"7. The defendants made no agreement or representations to the plaintiff that they would restrict other adjacent property owned by the defendants so that such property would not be used by any business competitor of the plaintiff."

8. Defendants delivered abstract of title to an abstracter. The abstract covers other lots and some delay was occasioned because the original abstract had to be "split". Plaintiff's attorney was advised.

9. The abstract of title was delivered to plaintiff's attorney on April 18, 1950, for examination.

"10. Plaintiff's attorney accepted delivery of the abstract and examined the same for the plaintiff, and on or about May 9, 1950, delivered to defendants' attorney a copy of his title opinion setting forth his exceptions to the title and the title and the requirements necessary to satisfy the same.

"11. Defendants, upon receipt of said title opinion, proceeded diligently with the steps necessary to satisfy and meet the requirements set forth in said title opinion, and the attorneys for the parties conferred several times on the progress in the matter.

"12. The defendants obtained the release of the two (2) tax liens filed by

the Labor Department of the State of Kansas, described in said opinion, and filed the same of record.

"13. The defendants made arrangements with Ben Paul Rollert and Olive E. Rollert, his wife, to obtain a release of the mortgage described in said opinion for the sum of One Thousand Dollars ($1,000.00) to be paid to said mortgagees from the proceeds of said sale.

"14. The defendants made arrangements to satisfy and discharge all other liens and encumbrances against said real estate, as shown by said title opinion, out of the proceeds of said sale and to satisfy all other requirements.

"15. On May 19, 1950, plaintiff and his attorney went to the office of defendants' attorney and were advised of defendants' arrangements to satisfy and discharge the said liens and encumbrances against the real estate and to satisfy all other requirements of the plaintiff set forth in the title opinion and were advised that defendants were ready to complete the sale. Plaintiff notified defendants' attorney, however, that he no longer wanted the property, that the sale was rescinded, and demanded the return of the earnest money. At the time of said meeting and notice, said liens and encumbrances, with the exception of the liens of the State of Kansas for taxes, had not been actually discharged, and all of them were still of record.

"16. The defendants refused to rescind said agreement of sale or to return the earnest money."

17. Not material.

18. Not material.

"19. Defendants have tendered to the plaintiff a warranty deed to the above described real estate but plaintiff has refused to accept the same."

## As matters of law the trial court concluded:

1. That there was a meeting of minds between the parties for the purchase and sale of the real estate.

"2. Under the Statute of Frauds, no action may be brought upon any contract for the sale of lands unless the agreement upon which the action is brought, or some memorandum or note thereof, shall be in writing and signed by the party to be charged therewith (G. S., 1935, 33-106). The written instrument in this case, dated March 21, 1950, executed by James F. Sewell and Theodore R. Dolby, together with the written title opinion of plaintiff's attorney of his examination of the abstract of title to the real estate described in said instrument, constituted a sufficient memorandum in writing of the plaintiff's agreement to buy said real estate to satisfy the statute of frauds, and it is no defense to defendants' action for specific performance of said agreement that it was not signed by Virginia T. Dolby.

"3. The plaintiff by his conduct in accepting the abstract of title for examination when proffered, in delivering to defendants' attorney a copy of the title opinion setting forth exceptions to the title, in permitting defendants thereafter to take steps to correct said exceptions and perfect their title in reliance upon said title opinion, and by his failure to request of defendants or defendants' attorney that a 'Regular Real Estate Sales Contract' be executed between the parties, waived the provision in said Exhibit A for the execution of a 'regular Real Estate Sales Contract.'"

4. Time was not of the essence and defendants were entitled to a reasonable time to comply with plaintiff's requirements on the title.

"5. In order to rescind the said agreement, the plaintiff was required to give the defendants notice of his intention to rescind and a reasonable time for performance by the defendants. The notice given by the plaintiff in this case on May 15, 1950, and again on May 19, 1950, was not a reasonable notice.

"6. The amount of the encumbrances against the real estate involved herein is much less than the amount of the purchase money so that such encumbrances can be completely discharged from the proceeds of the sale and the existence of such encumbrances is therefore not a sufficient defect to defeat specific performance in this case."

The judgment was that the contract be specifically performed; that defendants forthwith deposit with the clerk a good and sufficient warranty deed and the abstract of title and that plaintiff, on or before March 19, 1951, pay the clerk the balance due of $2,500; that upon full receipt the clerk discharge the liens upon the real estate and, upon evidence of proper releases and discharges, pay the balance of the purchase price to defendants Dolby; that if plaintiff fail to pay the balance of the purchase price as decreed, the agreement should be cancelled, plaintiff barred of his right to specifically perform the contract and defendants have judgment against him for $1,000. Costs were taxed to plaintiff. Plaintiff's motion for a new trial was denied and in due time he appealed from the judgment and the ruling on the motion for a new trial.

Before taking up the questions as presented in the appellant's brief, we note that he does not include in his abstract any of the evidence introduced at the trial. Under the circumstances, we assume the findings of fact are correct. See *Addington v. Hall,* 160 Kan. 268, 270, 160 P. 2d 649. The result is that parts of his argument, based on evidence contrary to the facts as found by the trial court, must be ignored.

Appellant first contends there never was a contract between him and the Dolbys for the reason that both owned the real estate but that Virginia T. Dolby did not sign the agreement of purchase and sale. In support, he cites the first clause of the first paragraph of Syl. ¶ 1 in *Hallard v. Kinney,* 135 Kan. 323, 10 P. 2d 836. The entire paragraph reads:

"Ordinarily a contract of two persons signed by only one of them cannot be enforced, but where the party seeking to take advantage of the fact that the contract was signed by only one of the parties has stood by and permitted the party who signed the contract to furnish labor and material and fully perform the contract he is held to have waived the fact that one of the parties did not sign and the contract is effective between the parties."

Under the findings of fact in the instant case, the above decision does not support the appellant's contention but is against it. Appellant also quotes from *Boyd v. Colgan*, 126 Kan. 497, 499, 268 Pac. 794, and from *Allen v. Elwell*, 129 Kan. 296, Syl. ¶ 1, 282 Pac. 706, that a contract in writing, to be binding, must be executed by all of the parties to it. In the first case it is recognized that one grantee in a grant of hunting privileges may enforce the grant although another named grantee did not execute the contract. A mere reading of both cases, however, will disclose that they are clearly distinguishable from the case at bar.

In our opinion the correct rule, as applied to the facts before us, was set forth in *Wiley v. Hellen*, 83 Kan. 544, 112 Pac. 158, where it was held:

"The signing of a contract to convey real estate by the party to be charged in a suit for specific performance satisfies the statute of frauds; and want of mutuality in the contract because the party suing did not sign is not a defense to the action." (Syl. ¶ 1.)

See also *McKee v. McClain*, 112 Kan. 746, 749, 212 Pac. 906, and *Steele v. Nelson*, 139 Kan. 559, 32 P. 2d 253, where it was said:

"The contention of defendant that he is not bound because plaintiff was not bound is not good, even though it should be held that plaintiff was not bound in this case. This is the rule laid down in *Wiley v. Hellen*, 83 Kan. 544, 112 Pac. 158." (l. c. 563.)

Following the above is a quotation from the cited case and reference to other cases.

Appellant contends that his acceptance and examination of the abstract did not constitute a waiver of his right to a regular real estate sales contract. Directing attention to authorities holding that to constitute a waiver there must be a decisive act showing an intention to relinquish the right, appellant makes an extended argument that by accepting the abstract and having it examined, he did not waive his right to the regular contract. The findings of fact disclose that appellant knew at the end of three days or on March 24th that he did not have such a contract. Notwithstanding he accepted the abstract for examination on April 18th, returned it to Dolby on May 9th and thereafter permitted Dolby to proceed to satisfy his requirements as to the title. His diligence was limited to asking Dolby's agent for such a contract on March 24th. When informed by that agent to see Dolbys or their attorney, he did nothing further toward getting the "regular" contract he now urges was so important. Measured by the allegations of the petition, the im-

portant part of such a contract would have dealt with restrictions on Dolbys' adjacent property. Under finding No. 7 there was no agreement to that effect. The trial court did not err in holding appellant waived execution of a "regular Real Estate Sales Contract."

Appellant contends that the title to the real estate was not marketable. A portion of this argument seems to be based on appellant's version of the facts rather than on the facts found by the trial court. As we understand, it is contended that the title was not marketable because of the existence of liens. Ignoring any findings, appellant's argument seems to be that the encumbrances had to be fully removed before the purchase and sale were completed and that those encumbrances could not be discharged "with the buyer's money." In substance the same contention has been made previously in this court. In *Guild v. Railroad Co.*, 57 Kan. 70, 45 Pac. 82, 33 L. R. A. (ns) 77, 57 Am. St. Rep. 312, it was held:

"In an action by a vendor to enforce the specific performance of a contract for the sale of lands, the existence of mortgages amounting to far less than the contract price to be paid by the purchaser, and which can be discharged out of the purchase-money, does not constitute a bar to the action." (Syl. ¶ 1.).

And a quite similar holding was made in *Keepers v. Yocum*, 84 Kan. 554, Syl. ¶ 4, 114 Pac. 1063.

We note also some complaint that the abstract was not complete and that a final opinion on it was impossible. It is true that the trial court made no explicit finding on the particular point, but it did find generally in favor of the Dolbys. We cannot assume the abstract was not complete—there is no abstract of any evidence as to its condition.

In arguing that appellant should have had judgment on the pleadings, appellant says only that his previous argument applies. In our opinion the pleadings did not disclose the parties had not made a binding contract nor that there was not a marketable title to the real estate. The trial court did not err in ruling on the motion for judgment on the pleadings.

A consideration of the record and of appellant's specifications and contention of error convinces us the judgment of the trial court should be and it is affirmed.